IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS III, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | NO. 21-5032 |

## **ORDER**

AND NOW, this _____ day of _____, 2022, upon consideration of

Defendants' Motion for Summary Judgment, and any response thereto, it is hereby ORDERED

and DECREED that said motion is GRANTED. Judgment is entered in favor of Defendants on

all counts.


BY THE COURT:


_____

SCHMEHL, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS III, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | NO. 21-5032 |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Kutztown University, Kenneth Hawkinson, and Jesus Peña (collectively,

"Defendants"), by and through counsel, for the reasons set forth in the attached Memorandum of

Law, hereby move for summary judgment pursuant to Federal Rule of Civil Procedure 56.


Dated: October 14, 2022                    Respectfully submitted,

                                           JOSH SHAPIRO
                                           Attorney General

COMMONWEALTH OF PENNSYLVANIA               BY: /s/ Kathy A. Le
OFFICE OF ATTORNEY GENERAL                 KATHY A. LE (Pa. No. 315677)
The Phoenix Building                       Deputy Attorney General
1600 Arch St., 3rd Floor
Philadelphia, PA 19103                     KAREN M. ROMANO
Telephone:  (215) 560-2141                 Chief Deputy Attorney General
Fax:  (717) 772-4526                       Civil Litigation Section
kle@attorneygeneral.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS III, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | NO. 21-5032 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Kutztown University, Kenneth Hawkinson, and Jesus Peña (collectively,

"Defendants"), by and through counsel, respectfully submit this Memorandum of Law in Support

of their Motion for Summary Judgment.

**I.    INTRODUCTION**

This lawsuit relates to the death of Anthony Ardo, who was killed in a police shooting

involving Troopers Pagan and Splain on May 20, 2017. Plaintiffs are the parents and

administrator of the estate of Anthony Ardo. Plaintiffs initiated this lawsuit on December 4,

2018, bringing claims against Troopers Pagan and Splain for wrongful death and survival action

claim (Count I) and excessive force/assault and battery claim under 42 U.S.C. § 1983 and

common law (Count II). (ECF No. 1.) On October 10, 2019, on the eve of the close of discovery,

Plaintiffs filed a Motion for Leave to File a First Amended Complaint. (ECF No. 20.) On

January 17, 2020, after the Court granted leave, Plaintiffs filed the Second Amended Complaint,

adding a claim against the Pennsylvania State Police ("PSP") for violation of the Americans with

Disabilities Act (Count III). (ECF No. 33.) Plaintiffs have stipulated to voluntarily dismiss the

claims against PSP. (ECF No. 102.) Thus, the only remaining claims in this matter are against

Troopers Pagan and Splain.

With discovery now completed, it is clear that the material facts in this case are largely undisputed and Defendants are entitled to summary judgment on all claims. ***First***, Tprs. Pagan and Splain are entitled to judgment in their favor on the excessive force claims brought pursuant to Section 1983 (Count II) because the material undisputed facts establish that the Troopers used reasonable force in response to the immediate threat of Ardo lighting an explosive strapped to his neck, in close proximity to the Troopers and Monaghan's residence. ***Second***, Tprs. Pagan and Splain are entitled to qualified immunity on the excessive force claim (Count II) because they did not violate clearly established law. ***Third***, Tprs. Pagan and Splain are entitled to judgment in their favor on all claims based on state law—including the wrongful death and survival claims (Count I) and assault and battery claims (Count II)—because, as a matter of law, Tprs. Pagan and Splain are protected by sovereign immunity.

For the foregoing reasons, Defendants are entitled to summary judgment on all claims.

## II.     FACTUAL BACKGROUND

In accordance with this Court's procedures, the factual background of this case is set forth in Defendants' Statement of Undisputed Material Facts ("SUMF"), which is filed in conjunction herewith.

## III.     LEGAL STANDARD

The summary judgment standard is well established. A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A movant that will

not bear the burden of proof on an issue at trial satisfies its initial responsibility on summary judgment by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In that situation, a movant is entitled to summary judgment if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case." Id. at 322. This factual showing must be based on evidence in the factual record and not on conjecture or speculation. Wharton v. Danberg, 854 F.3d 234, 244-45 (3d Cir. 2017); see also Fed. R. Civ. P. 56(c) (evidence must be admissible to be considered at summary judgment). But in deciding whether the movant is entitled to judgment as a matter of law, the Court must view all admissible evidence in the record in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

A non-moving party may not "rest upon mere allegations, general denials or ... vague statements... ." Trap Rock Industries, Inc. v. Local 825, Intern. Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3rd Cir.), cert. denied, 502 U.S. 940 (1991)). Conclusory statements are not facts and cannot create issues of fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 889 (1990). Furthermore, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt to the material facts." Matsushita Indus. Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The mere existence of an alternate version is not grounds for denial of summary judgment. Saucier v. Katz, 533 U.S. 194, 212 n.3 (2001), overruled on other grounds by Pearson v. Callahan, 129 S.Ct. 808 (2009) ("[d]isputed versions of the facts alone are not enough to warrant denial of summary judgment") (quoting Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)). If the non-moving party's evidence "is merely colorable, …or is

not significantly probative, ... summary judgment may be granted." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

## IV.   ARGUMENT

### A.   Defendants Hawkinson and Peña Cannot Be Held Individually Liable Under Section 504

Section 504 of the Rehabilitation Act provides, in relevant part, that:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

190 29 U.S.C. § 794(a).

"Congress passed the Rehabilitation Act in 1973 to make certain that no individual with a disability would "be subjected to discrimination under any program or activity receiving Federal financial assistance.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 207 (3d Cir. 2009). The linchpin of Section 504 is the receipt of federal funds. Thus, the Third Circuit Court of Appeals has held that Section 504 applies to entities that receive federal financial assistance, and does not apply to individual employees of those entities. Emerson v. Thiel Collage, 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act.") (citing United States Dep't of Transp. v. Paralyzed Veterans of America, 477 U.S. 597, 605–06, 106 S.Ct. 2705, 91 L.Ed.2d 494 (1986)).

There is no "individual liability under the Rehabilitation Act." Doe v. DeJoy, No. 5:19-cv-05885, 2020 WL 4382010, at *11 (E.D. Pa. July 31, 2020) (citing Zied-Campbell v. Richman, No. CIV.A. 1:04-CV-0026, 2007 WL 1031399, at *17 (M.D. Pa. Mar. 30, 2007) ("[G]enerally officials may not be held liable in their individual capacities under Title II of the ADA or Section 504 of the Rehabilitation Act."), aff'd, 428 F. App'x 224 (3d Cir. 2011)). This is equally true in

cases alleging employment discrimination under the Rehabilitation Act against individual defendants not just the employer. See, e.g., O'Donnell v. Pa. Dep't of Corrections, 790 F. Supp. 2d 289, 308 (M.D. Pa. 2011) (dismissing employment discrimination claims against individual defendants because "the law is well-established in the Third Circuit that parties cannot be held liable in their individual capacities … under § 504 of the Rehabilitation Act"); Olschefski v. Red Lion Area School Dist., 2012 WL 6003620, at *9 (M.D. Pa. Nov. 30, 2012) (dismissing employment discrimination claim under Rehabilitation Act against individual defendant); Haybarger v. Lawrence County Adult Probation & Parole, C.A. No. 06-862, 2007 WL 789657, *7 (W.D. Pa. Mar. 14, 2007) (same); Zankel v. Temple University, C.A. No. 05-2760,  2006 WL 1083600, at *6 (E.D. Pa. Apr. 24, 2006) (same).

Here, Plaintiff sues Defendants Hawkinson and Peña in their individual capacities. Compl. ¶¶ 7, 8. Plaintiff brings claims against Defendants Hawkinson and Peña for retaliation and interference in violation of Section 504. Compl, Counts VII, X. These claims are very clearly barred under Third Circuit precedent.

Thus, Count VII against Defendant Hawkinson and Count X against Defendant Peña should be dismissed.

### B.      Section 1983 Is Not Available to Provide a Remedy for Violations of Section 504

42 U.S.C. §1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

It is well established that § 1983 provides a means to enforce individual rights under federal statutes as well as the Constitution. See Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502 (1980).

But § 1983 does not provide an avenue for relief every time a state actor violates a federal law. "Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 122 S.Ct. 2268 (2002). Even after this showing, "there is only a rebuttable presumption that the right is enforceable under § 1983." Blessing v. Freestone, 520 U.S. 329, 341, 117 S.Ct. 1353 (1997). But, the "defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 120, 125 S.Ct. 1453 (2005). "[E]vidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" Id. (quoting Blessing, 520 U.S. at 341). "The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." Rancho Palos Verdes, 544 U.S. at 121 (citing Alexander v. Sandoval, 532 U.S. 275, 290, 121 S.Ct. 1511 (2001) ("[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others").

In A.W. v. Jersey City Public Schools, the Third Circuit Court of Appeals examined whether Congress intended to allow the rights granted under Section 504 to be remedied through a § 1983 action. 486 F.3d 791 (3d Cir. 2007). The Court noted that Section 504 provides remedies that "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964," and include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract. A.W., 486 F.3d at 804. "Even though there is no express, private right of action within Section 504, Congress clearly incorporated, through adoption of Title VI's remedial scheme, a private, judicial

remedy for violations of the statute." Id. Noting the Supreme Court's guidance that, where a statute has provided a judicial remedy, courts can infer that Congress intended the remedy to be exclusive, the A.W. Court found that there is nothing in Section 504 that undercuts the inference. 486 F.3d at 805. "There is no showing that the remedial scheme in Section 504 was intended 'to complement, rather than supplant, § 1983.'" A.W., 486 F.3d at 805-806. Thus, the Court concluded that "§ 1983 is not available to provide a remedy for defendants' alleged violations of [plaintiff's] rights under Section 504." A.W., 486 F.3d at 806.

Here, Plaintiff brings claims against Defendant Hawkinson and Pena under § 1983 "for violation of plaintiff's federal statutory rights under Section 504." Compl., Counts VII, X. Following the Third Circuit Court of Appeals' decision in A.W., it is clear that these claims cannot stand. See Fanciullo v. U.S. Postal Service, C.A. No. 12-5467, 2013 WL 5467169, *4 (D.N.J. Sep. 30, 2013) (dismissing § 1983 claims against individual defendant alleging in employment discrimination in violation of Section 504 of the Rehabilitation Act).

Thus, Count VIII against Defendant Hawkinson and Count XI against Defendant Peña should be dismissed.

### C.   Plaintiff Fails To State a § 1983 Claim Under the Fourteenth Amendment

The Fourteenth Amendment Due Process Clause prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To invoke the Due Process Clause, a plaintiff must show a protected liberty interest and that the procedural safeguards were inadequate. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). A plaintiff must establish both elements—the existence of adequate process defeats a due process claim even where there is a protected interest at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

In evaluating claims brought under the Fourteenth Amendment, the Supreme Court has established a "more specific provision rule," which states that, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " Albright v. Oliver, 510 U.S 264, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

In the instant case, Plaintiff brings claims under § 1983 against Defendants Hawkinson and Peña alleging violations of the 1st and 14th Amendments. Compl., Counts IX, XII. Plaintiff has failed to make any showing that he has a protected liberty interest or how the procedural safeguards for the protected liberty interest are insufficient. Plaintiff relies, in these two Counts, on the same allegations about discrimination and retaliation that form the basis of his Section 504 and First Amendment claims. Defendants can find no cases holding that there is a protected liberty interest in not being discriminated against on the basis of a disability. And the right to be free from retaliation is protected under the First Amendment, thus under the Supreme Court's "more specific provision" rule any such claims should be brought under the First Amendment, not the Fourteenth.

Thus, the Court should dismiss Counts IX and XIII to the extent they bring any claims under the Fourteenth Amendment.

### D.     Defendants are Entitled to Judgment In Their Favor on the Section 504 Discrimination and Failure to Accommodate Claims

The standards set forth in the Americans with Disabilities Act are to be used in evaluating accommodation claims under the Rehabilitation Act. See 29 U.S.C. § 794(d). Under the ADA, "an employer discriminates against a qualified individual with a disability when the employer

does not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)).

To establish a *prima facie* case of discrimination under the ADA, an employee must show that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) has suffered an adverse employment action as a result of her disability. Hohider v. UPS, Inc., 574 F.3d 169, 186 (3d Cir. 2009).

To prevail on a claim under the ADA or Rehab Act, Plaintiff must first establish that she is a "qualified individual," defined as follows:

> The term "qualified," with respect to an individual with a disability, means that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires **and, with or without reasonable accommodation, can perform the essential functions of such position.**

29 C.F.R. § 1630.2 (emphasis added). When making an accommodation claim, "[a]n employee can succeed under the Rehabilitation Act only if the employee can demonstrate that a specific, reasonable accommodation would have allowed [him] to perform the essential functions of [his] job." Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (internal citations and quotations omitted). "[E]mployers are not required to modify the essential functions of a job in order to accommodate an employee." Id.

In determining what the "essential functions" of a position are, evidence such as the employer's judgment as to what functions are essential and the amount of time spent on the job performing the function must be considered. 29 C.F.R. § 1630.2. The EEOC regulations set forth

a non-exhaustive list of evidentiary examples that may assist courts with identifying the "essential functions" of a job: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). "[N]one of the factors nor any of the evidentiary examples alone are necessarily dispositive." Skerski v. Time Warner Co., a Div. of Time Warner Emtm't Co, L.P., 257 F.3d 273, 279 (3d Cir. 2001).

If an employee requests a reasonable accommodation that will allow her to perform the essential functions of her job, her employer must assist her in seeking accommodations through a "flexible, interactive process," Hohider, 574 F.3d at 187 (citations omitted). Both employers and employees "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith," Taylor, 184 F.3d at 312. That said, "[t]he interactive process does not dictate that any particular concession must be made by the employer." Id. at 317. "All the interactive process requires is that employers make a good faith effort to seek accommodations." Id. "[B]oth parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Mengine, 114 F.3d at 420.

Ultimately, the employer is not required to offer the "best accommodation or the employee's preferred accommodation; the accommodation need only be reasonable. See Yovtcheva v. City of Phila. Water Dep't, 518 F. App'x 116, 121–22 (3d Cir. 2013). An employer providing temporary paid leave can be a reasonable accommodation. Moore v. CVS Rx Services,

Inc., 660 F. App'x 149 (3d Cir. 2016) (upheld district court grant of summary judgment on ADA claim where employer gave 6 months paid leave to employee as accommodation).

       1.      <u>Plaintiff Could Not Perform the Essential Functions of the Job</u>

Here, the undisputed material facts show that Plaintiff cannot perform the essential functions of his position as Associate Professor. Thus Kuztown was not required to provide him with any accommodation under Section 504. The undisputed material facts supports the conclusion that in-person teaching is an essential function of Plaintiff's position.

First, as Plaintiff himself admits, Kutztown's faculty collective bargaining agreement ("CBA"), establishes that decisions regarding class scheduling will be made by the Department Chair and Dean, and faculty members are required to teach the classes determined by the Department Chair and Dean, including the modality of teaching. Additionally, under the CBA, another requirement of Plaintiff's position is keeping office hours, which shall be held "at such times and locations as will accommodate the needs of the students." Thus, the plain language of the CBA dictates that student need—not faculty preference—is the only determining factor when setting a location for office hours. Based on these terms, it is clear that the ability to teach and hold office hours in-person is an essential function of Plaintiff's position.

Second, Kutztown's past practices in hiring faculty and development of course schedules and teacher assignments supports a conclusion that in-person teaching is an essential function for Kutztown faculty. Kutztown has never hired a full-time faculty member to work and teach solely remotely. With the sole exception of the period covered by Governor Tom Wolf's Declaration of Emergency due to the COVID-19 pandemic, the University has never allowed a full-time faculty member to work and teach exclusively remotely. Although Kutztown does offer some online courses, this has traditionally been only a very small percent of Kutztown's course offerings.

While some faculty members, including Plaintiff, had routinely taught classes remotely pre-pandemic, all faculty members are required to also teach and be available to students in person.

Third, Plaintiff's past employment history at Kutztown supports a conclusion that in-person teaching is an essential function of his job. Prior to the pandemic, Plaintiff admits that he has always taught the majority of his classes online, and was required to hold office hours in his office. Plaintiff never taught more than one class a semester online and was always required to maintain an in-person presence on Kutztown's campus. None of the classes that Plaintiff teaches has ever only been offered as an online class--Plaintiff always also taught an in-person section within the school year. These practices have been true during Plaintiff's entire fifteen-year employment with Kutztown before the COVID-19 pandemic.

Given the undisputed facts set forth above, teaching at least some classes and being available to students in person is an essential function of Plaintiff's position as an Associate Professor. Plaintiff's requested accommodation was to allow Plaintiff to work fully remotely. Since Plaintiff could not perform the essential functions of the job with an accommodation, Kutztown was not required to provide the accommodation.

For the foregoing reasons, Defendants were not required to provide an accommodation because Plaintiff was not a qualified individual, thus Defendants are entitled to judgment in their favor on all claims under the Rehabilitation Act based on Defendants' failure to provide an accommodation or engage in the interactive process, specifically Counts I-VI.

2.      Defendants Offered An Accommodation

Although a determination that an employee cannot perform the essential functions of the job would end the Section 504 inquiry, nonetheless here, Defendants attempted to provide some

accommodation. The University was willing to find an accommodation for Plaintiff that did not contravene the school's essential functions for faculty members.

Although Defendants denied Plaintiff's preferred accommodation to convert his in-person classes to online and work fully remotely, Defendants offered to extend Plaintiff's medical leave, which would have been partially paid. Plaintiff instead requested a paid sabbatical. Defendants denied the sabbatical request, determining that it did not apply to Plaintiff's situation. But President Hawkinson devised an option that would allow Plaintiff to work half-time online and take leave half-time. Defendants asked Plaintiff if he was interested in exploring this option. He did not accept. Defendants again offered to extend Plaintiff's medical leave, partially paid. Plaintiff ultimately accepted. When an employer determines that the employee cannot perform the essential functions of the job with the accommodation requested, instead allowing the employee to take a leave of absence while the employee recovers from the disability is a reasonable accommodation. See Moore v. CVS Rx Services, Inc., 142 F. Supp. 3d 321, 338-339 (M.D. Pa. 2015) (granting summary judgment to employer on employee's failure to accommodate or engage in the interactive process claim).

For the foregoing reasons, the undisputed facts show that Defendants provided a reasonable accommodation and are thus entitled to judgment in their favor on all claims under the Rehabilitation Act based on Defendants' failure to provide an accommodation or engage in the interactive process, specifically Counts I-VI.

### 3.  Defendants Did Not Discriminate on the Basis of Disability

To establish a *prima facie* case of discrimination under the ADA, an employee must show that she: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer; and (3) has suffered an

adverse employment action as a result of her disability. Hohider v. UPS, Inc., 574 F.3d 169, 186 (3d Cir. 2009). After a *prima facie* case of discrimination has been established, the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793–94, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII cases is equally applicable to discrimination claims under the Rehabilitation Act. Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007).

Under the McDonnell Douglas paradigm, plaintiff has the initial burden to make a *prima facie* showing of discrimination, but if s/he does so, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action. Id. at 802, 93 S.Ct. 1817. If the defendant meets this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, the plaintiff must then be afforded an opportunity to show that the employer's stated reason for the employment action, such as plaintiff's rejection or separation, was pretextual. McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. 1817. In order to prove the employer's explanation is pretextual, the plaintiff must "cast [ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication ... or ... allow[ ] the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir.1994).

A plaintiff who has made out a *prima facie* case may defeat a motion for summary judgment by either "(i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more

likely than not a motivating or determinative cause of the adverse employment action." Id. at 764.

In the instant case, as set forth in detail above, Plaintiff has not made a *prima facie* showing of discrimination because Plaintiff is not qualified to perform the essential functions of the job. Even if Plaintiff had made a *prima facie* showing, Defendants' actions were all based on non-discriminatory reasons.

First, Defendants' denial of the accommodation to convert all in-person classes to online was based on non-discriminatory reasons. Namely, doing so would fundamentally alter the service provided to the students who had all signed up for an in-person class. Given the anger Dr. Hawkinson heard expressed from students about the University converting in-person classes to online the prior school year, continuing that practice would have created an undue hardship on the school. Kutztown is a traditionally, predominately in-person school. The vast majority of its classes are face-to-face. No class in a traditional department, such as psychology, has ever been offered exclusively online. Plaintiff admits that he has never exclusively taught his classes online. But his indefinite request to teach fully remotely would have the effect of converting the classes that he is uniquely qualified to teach to exclusively online offerings. Defendants did not feel that this aligned with Kutztown's pedagogical model as a predominately face-to-face university.

Second, Defendants' denial of Plaintiff's request for a sabbatical for a "restoration of health" was based on a non-discriminatory reason. Defendants based the decision on their understanding that the sabbatical was to be used sparingly, and only in circumstances were the employee was actively recovering from a serious medical situation and could not work at all. The sabbatical had been rarely used. Plaintiff, conversely, was healthy enough to have been cleared

by his doctors to return to work full time, just remotely. The sabbatical thus did not apply to Plaintiff's situation. Plaintiff no circumstance wherein the sabbatical had been granted in a situation similar to his to discredit Defendants' proffered reason.

Third, Defendants' imposition of the full-duty requirement was based on established benefits rules to return from an extended medical leave. To return from extended full-time medical leave, as Plaintiff was on, an employee must be released to return to work full time, full duty. This rule applied to all individuals on an extended full-time medical leave. As discussed above, the duties for a full-time faculty member include teaching classes in person and being available for in-person office hours. Nothing in the undisputed record discredits those reasons.

For the foregoing reasons, Defendants' actions did not discriminate against Plaintiff on the basis of a disability and judgment should be entered in Defendants' favor on all claims based on discrimination (Counts I-VI).

### E.    Defendants Are Entitled to Judgment In Their Favor on the Retaliation Claims

The elements of a retaliation claim brought under 42 U.S.C. § 1983, predicated on the First Amendment, and one brought for alleged violations of the Retaliation Act are the same. Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). In order to establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show:

> (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.... If an employee establishes a prima facie case ... the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse action.... If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.

Ozlek v. Potter, 259 Fed.Appx. 417, 422 (3d Cir.2007) (quoting Krouse v. American Sterilizer Co., 126 F.3d 494, 500–01 (3d Cir.1997) (considering claim of retaliation under the ADA)); see also Lauren W., 480 F.3d at 267.

In order for an adverse action to be actionable as retaliation, it must be sufficient to deter a person of ordinary firmness from exercising her right to engage in the protected activity. Cf. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir.2000) (addressing First Amendment retaliation standard). To establish the requisite causal connection, a plaintiff is typically required to prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W., 480 F.3d at 267. (citations omitted). In the absence of that proof, the plaintiff is required to show that from the " 'evidence gleaned from the record as a whole' the trier of fact should infer causation." Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000)). The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. Id.

Here, as discussed above, Defendants actions were all based on legitimate business purposes, not retaliation. Plaintiff may separately point to a letter written by University legal counsel, Michael Ferguson. Nothing in Mr. Ferguson's letter evidences retaliation on the part of Defendants. On October 4, 2021, an attorney with the organization Disability Rights Pennsylvania ("DRP") wrote a letter addressed to Defendant Pena, setting forth the legal position that Defendants had violated Plaintiff's rights by failing to grant Plaintiff's preferred accommodation to convert all his classes to online. The letter asked for a response within ten days as to how the University would "resolve this matter." Following protocol when receiving legal letters, Mr. Pena forwarded the letter the university's legal counsel.

On October 14, 2021, Mr. Ferguson responded to the letter in writing. In this letter, Mr. Ferguson wrote that he would be happy to discuss the matter with DRP but would not engage with them "through written means" if Plaintiff continued to "publish all written information in a public manner." Mr. Ferguson explained that he appreciated Plaintiff's advocacy but he "did not intend to engage in a public relations battle" by negotiating the situation in the public sphere. The letter did not state that Plaintiff could not continue his public statements. The letter did not even state that Mr. Ferguson would not engage with DRP if Plaintiff continued his public statements. It merely said that that Mr. Ferguson would not engage *in writing* if Plaintiff continued to post those written statements in public. Indeed no one at Kutztown ever refused to talk to Plaintiff.

Specifically, Defendants Hawkinson and Peña never refused to speak, or directed anyone to refuse to speak, to Plaintiff either before or after Mr. Ferguson's letter. Defendants Hawkinson and Peña at no time refused to speak, or directed anyone to refuse to speak, with Plaintiff about his situation either before or after he started speaking out publicly. Further, Defendants Hawkinson and Peña did not write this letter, approve the language, or even review it before it was sent and thus the action should not be imputed onto them in their individual capacity claims. See Helsing v. Seidenberger, 286 Fed. Appx. 773, 774 (3d Cir. 2008) (letter written by lawyer did not show retaliation by an administrator who did not request the letter be sent and only reviewed it briefly after it had been sent).

For the foregoing reasons, the judgment should be entered in favor of Defendants on all claims based on retaliation (Counts VI, IX, XII).

**F.      To the Extent Plaintiff Seeks Non-Economic Damages Under the Rehabilitation Act, They Are Not Recoverable**

In paragraphs 5 and 6 of the remedies section of the Complain, Plaintiff lists damages for "emotional distress" and "punitive damages."

Earlier this year, the Supreme Court issued its decision in Cummings v. Premier Rehab Keller, P.L.L.C., __ U.S. __, 142 S.Ct. 1562 (2022). There, the plaintiff sued a physical therapy service provider for violations of the Rehabilitation Act of 1973, § 504, 87 Stat. 394, as amended, 29 U.S.C. § 794(a) ("Rehabilitation Act"), and the Patient Protection and Affordable Care Act, § 1557, 124 Stat. 260, 42 U.S.C. § 18116 ("Affordable Care Act"). Id. at 1568-69. The Court noted that these statutes were enacted pursuant to Congress's authority under the Spending Clause and lack any express civil remedial provisions. Id. at 1569-70. Rather than relying on power to impose policy "involuntarily" on the states, Spending Clause legislation operates like a contract—"in return for federal funds, the [recipients] agree to comply with federally imposed conditions." Id. at 1570 (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 16-17 (1981)).

Because Congress's authority to regulate operates like a contract, the same rationale "limits 'the scope of available remedies' in actions brought to enforce Spending Clause statutes." Id. (quoting Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 287 (1998)). So in this contractual arrangement, by accepting federal funds, a funding recipient understands that it "will be subject to the *usual* contract remedies in private suits." Id. at 1571. The Court concluded that neither punitive nor noneconomic damages are available in private claims filed pursuant to one of the Spending Clause statutes. Id. at 1571-72. Specifically, Cummings was decided in the context of the Rehabilitation Act and Affordable Care Act. Accordingly, Plaintiff cannot recover

emotional distress or punitive damages through his Rehabilitation Act claim. <u>J.P. v. State of</u> <u>Nebraska</u>, No. 22-3095, 2022 WL 5254121, at *5 (D. Neb. Oct. 6, 2022).[1]

Plaintiff's claims for any damages other than economic damages under the Rehabilitation Act should therefore be dismissed.

## V.    CONCLUSION

Wherefore, this Court should grant summary judgment in favor of Defendants on all claims against them.

Dated: October 14, 2022                    Respectfully submitted,

                                           JOSH SHAPIRO
                                           Attorney General

COMMONWEALTH OF PENNSYLVANIA               BY: <u>/s/ Kathy A. Le</u>
OFFICE OF ATTORNEY GENERAL                 KATHY A. LE (Pa. No. 315677)
The Phoenix Building                       Deputy Attorney General
1600 Arch St., 3rd Floor
Philadelphia, PA 19103                     KAREN M. ROMANO
Telephone:  (215) 560-2141                 Chief Deputy Attorney General
Fax:  (717) 772-4526                       Civil Litigation Section
kle@attorneygeneral.gov

---

[1] Indeed, Plaintiff does not appear to have any economic damages, which typically consist of lost wages or out of pocket expenses.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS III, | : | CIVIL ACTION |
| | : | |
|     Plaintiff, | : | |
| | : | |
|       v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
| | : | |
|     Defendants. | : | NO. 21-5032 |

## **CERTIFICATE OF SERVICE**

I, Kathy Le, hereby certify that a true and correct copy of the foregoing Defendants'

Motion for Summary Judgment to be filed electronically on October 15, 2022 and is available for

viewing and downloading from the Court's Electronic Case Filing System ("ECF"). The ECF

System's electronic service of the Notice of Electronic Case Filing constitutes service on all

parties who have consented to electronic service.


/s/ Kathy A. Le
Kathy A. Le