IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS III, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, et al., | : | |
| | : | |
| Defendants. | : | NO. 21-5032 |

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

### A.    BACKGROUND

1.    Defendant Kutztown University of Pennsylvania ("Kutztown") is a member of Pennsylvania's State System of Higher Education, has a graduate and undergraduate student body of approximately 7500 students, an average class size of 26, and a student to teacher ratio of 17:1. See Kutztown University Fast Facts, available at: https://www.kutztown.edu/about-ku/fast-facts.html, attached as Exhibit 1 hereto.

2.    Plaintiff Stephen Oross, III, is a tenured faculty member at Kutztown University. Compl. ¶ 1. He started at Kutztown in August 2002. See Oross Dep. Tr. at 5, attached as Exhibit 2 hereto.

3.    Defendant Dr. Kenneth S. Hawkinson is Kutztown's President. See Compl. ¶ 7

4.    Defendant Jesus Peña is Kutztown's Vice President for Equity, Compliance, and Liason for Legal Affairs. See Compl. ¶ 8.

5.    Kutztown is a university that provides a traditional face-to-face, on-campus education that, prior to the COVID-19 pandemic, Kutztown had offered a limited number, approximately 4-5% of its course offerings, as online classes. See Hawkinson Dep. Tr. at 134, attached as Exhibit 3 hereto.

6.      Kutztown has never had a position for a full-time online-only faculty member; and outside of the COVID-19 pandemic, Kutztown has not had any faculty member work fully remotely. See Exh. 3, Hawkinson Dep. Tr. at 16-17; 28.

7.      Faculty members at Kutztown are represented by a union and their employment is governed by the terms of a collective bargaining agreement (hereafter, "Union Agreement"). See "Agreement Between Association of Pennsylvania State College & University Faculties (ABSCUF) and the Pennsylvania State System of Higher Education (State System)," effective July 1, 2019 to June 30, 2023, attached hereto as Exhibit 4.

8.      Under the Union Agreement, it is the purview of the department chair and the Dean—not faculty—to create the course schedule for each department, assign faculty to teach the courses, and determine the modality (i.e., online vs in-person) for each course. See Exh. 2, Oross Dep. Tr. at 29-30.

9.      Article 6(A)(2) of the Union Agreement states, in relevant part: "The department chairperson is also responsible for recommending to the Dean/Director such matters as personnel actions, curricular changes, course offerings, teaching assignments and the department budget."

10.     Article 10 of the Union Agreement states, in relevant part:

A. The STATE SYSTEM/UNIVERSITIES, at their sound discretion, possess the right, in accordance with applicable laws, to manage all operations including the direction of FACULTY and the right to plan, direct and control the operation of all facilities and property of the STATE SYSTEM, except as modified by this Agreement.

B. As provided by Act 195 (Section 702), matters of inherent managerial policy are reserved exclusively to the STATE SYSTEM/UNIVERSITIES. These "include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer (STATE SYSTEM/UNIVERSITIES), standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel."

11.     Under the terms of the Union Agreement, a full-time workload for a faculty member such as Professor Oross, constitutes twelve credits, or four classes, per semester. <u>See</u> Exh. 4, Union Agreement, Article 23(A)(1)(a).

12.     Article 23(A)(1)(c) of the Union Agreement states, in relevant part: "Full-time teaching FACULTY MEMBERS as defined in this Article shall maintain a minimum of five (5) office hours per week on no fewer than three (3) different days at such times and locations as will accommodate the needs of the students."

**B.     THE COVID-19 PANDEMIC: SPRING AND SUMMER 2020**

13.     On March 6, 2020, Pennsylvania Governor Tom Wolf declared a state of emergency in the Commonwealth due to the novel coronavirus ("COVID-19"), and in the ensuing weeks, Governor Wolf issued a series of executive orders requiring the closure of all non-essential business throughout the Commonwealth. <u>See</u> https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf, attached hereto as Exhibit 5.

14.     After Governor Wolf announced the state of emergency, Kutztown, along with most other institutions of higher education (IHEs) in the Commonwealth, had to discontinue all in-person instruction by March 16, 2020.

15.     For the remainder of the Spring 2020 semester, which ended on May 9, 2020, Kutztown converted the majority of its over 1700 classes to a remote-teaching format, with various degrees of success. <u>See</u> Hawkinson Dep. Tr. at 132:23-133:1.

16.     On March 18, 2020, the Families First Coronavirus Response Act was signed into law; which provided, among other things, an emergency expansion of the Family and Medical Leave Act, effective April 1, 2020 through December 31, 2020, to include specified reasons

related to COVID-19. See https://www.dol.gov/agencies/whd/pandemic/ffcra-employee-paid-leave, attached hereto as Exhibit 6.

17.     On June 26, 2020, Jennifer Weidman, Kutztown's Director of Human Resources, sent an email to all Kutztown faculty and staff detailing procedures to make a request for accommodation, flexible work arrangements, or leave under new expanded access due to the various COVID-19-related legislation and emergency orders. See Email from Weidman to Faculty and Staff, date June 26, 2020, attached hereto as Exhibit 7. The email stated that any employee "at high risk of severe illness from COVID-19 as defined by CDC guidance" could submit a request with Human Resources for a flexible work arrangement. See id.

18.     On July 15, 2020, Governor Wolf issued an Executive Order requiring all businesses to conduct their business remotely. See https://www.governor.pa.gov/wp-content/uploads/2020/07/20200715-TWW-targeted-mitigation-order.pdf, attached hereto as Exhibit 8.

19.     As a result, over 200 faculty and approximately 100 staff at Kutztown requested and were granted remote work arrangements for the 2020-2021 academic year. See Exh. 3, Hawkinson Dep. Tr. at 165-166.

20.     During the fall 2020 semester, Professor Oross was granted a flexible work arrangement and taught his full academic load, and held office hours, all remotely. See Exh. 2, Oross Dep. Tr. at 16; Compl. ¶ 29.

21.     During the fall 2020 semester, Professor Oross experienced a severe worsening of his heart condition and thus took a full-time medical leave of absence for the spring 2021 semester, beginning in January 2021. See Exh. 2, Oross Dep. Tr. at 13-14.

22.     In December of 2020, the U.S. Food and Drug Administration ("FDA") approved an Emergency Use Authorization for two COVID-19 vaccines.

23.     On February 24, 2021, Professor Oross received a heart transplant. See Compl. ¶ 29.

24.     March 8, 2021, Dr. Hawkinson issued an announcement to Kutztown students and employees announcing the school's intentions for reopening in Fall 2021. See Email Announcement re: "Message from President Hawkinson: Kutztown University Announces Fall 2021 Plans," dated March 8, 2021, attached hereto as Exhibit 9. The announcement stated "fewer statewide cases and increased availability of vaccines," brought encouraging news on the state of the COVID-19 pandemic, and thus Kutztown planned to "return to a primarily face-to-face environment" for the fall 2021 semester with "course offerings and residential experience [that] will more-closely reflect our traditional on-campus environment." See id.

25.     Dr. Hawkinson stated that faculty would be required to conduct office hours in-person as part of the University's return to its normal practices, but that faculty could meet with students remotely if the students agreed to the arrangement. See Exh. 3, Hawkinson Dep. Tr. at 77-78.

26.     Dr. Hawkinson's intent, when he announced plans to reopen Kutztown with its traditional on-campus environment in Fall of 2021 was for all staff and faculty to return to their duties as they were assigned prepandemic, with the understanding that he would have to follow any applicable legal requirements. See Exh. 3, Hawkinson Dep. Tr. at 15; 24.

27.     In response to information he received from the student body and student leadership that many students said they would not return to Kutztown if they were forced to take remote classes as in the 2020-2021 school year, Dr. Hawkinson's communicated his intention to

the students that he would not force students to take remote classes by changing the modality of their classes to online if they had signed up for a face-to-face class. See Exh. 3, Hawkinson Dep. Tr. at. 41; 65.

28.     On April 4, 2021, Governor Wolf issued an Executive Order rescinding his prior Order requiring all businesses operate remotely. See https://www.governor.pa.gov/wp-content/uploads/2021/04/2021.4.1-TWW-v2-amended-mitigation-enforcement-immunity-order.pdf, attached hereto as Exhibit 10.

29.     On April 12, 2021, Governor Wolf announced the expansion of eligibility for the COVID-19 vaccines to all adults over 18 years old in Pennsylvania. See https://www.governor.pa.gov/newsroom/gov-wolf-and-covid-19-vaccine-task-force-announce-that-all-adults-in-pennsylvania-are-eligible-tomorrow-to-schedule-covid-19-vaccination-appointments/, attached hereto as Exhibit 11.

30.     On April 12, 2021, Jennifer Weidman sent an email to all Kutztown employees announcing the school's plans for staff and faculty to return from flexible work arrangements. See Email from Weidman re: "Return from Flexible Work Arrangements," dated April 12, 2021, attached hereto as Exhibit 12. The email stated that staff would return to work at their regular worksite in June or July of 2021 and faculty would return to in-person instruction as scheduled on August 30, 2021. See id.

31.     On May 4, 2021, Governor Wolf announced that all mitigation orders, such as capacity limitations, except masking requirements, would be lifted on May 31, 2021. See https://www.media.pa.gov/pages/health-details.aspx?newsid=1437#:~:text=Harrisburg%2C%20PA%20%2D%20The%20Wolf%20administration,31%20at%2012%3A01%20AM., attached hereto as Exhibit 13 hereto.

32.     On May 13, 2021, the CDC changed its masking guidance to provide that fully vaccinated individuals no longer need to mask except on public transportation. See PA Dep't of Health Announcement re CDC Change to Masking Guidelines, at https://www.media.pa.gov/pages/health-details.aspx?newsid=1450, attached hereto as Exhibit 14.

33.     On May 14, 2021, Kutztown announced that, reflecting Governor Wolf's May 4 announcement, the school would lift mitigation restrictions on capacity and social distancing requirements on June 1, but mandatory masking would stay in effect. See Kutztown Announcement, dated May 14, 2021, attached as Exhibit 15 hereto.

34.     On May 26, 2021, Kutztown announced that it had "revised its mask protocols to reflect the latest CDC guidance, based on recommendations from Pennsylvania's departments of Health and Education." See Email Announcement, dated May 26, 2021, attached hereto as Exhibit 16. The announcement stated that, effective June 1, fully vaccinated individuals would no longer need to mask while unvaccinated individuals were strongly encouraged to mask when unable to social distance. See id.

35.     On June 10, 2021, the Pennsylvania Legislature voted to end Governor Wolf's Executive Order declaring a state of emergency due to COVID-19 and all masking and stay-at-home orders. See Senate Resolution 106, at https://www.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2021&sind=0&body=H&type=R&bn=106, attached hereto as Exhibit 17.

36.     As a result of his heart transplant, Professor Oross was required to take high doses of immune-suppressing medications to prevent organ rejection, and due to this, his heart

transplant doctors believed him to be at increased risk of severe illness or death from COVID-19. See Eisen Dep. Tr. at 11-12; 16; 28, attached hereto as Exhibit 18.

37.     In July of 2021, Professor Oross communicated to his Dean, Dr. David Beougher, his desire to return to work in the fall and the safety issues that may preclude him from doing so in person. See Email Chain, dated July 26-30, 2021, Exhibit SO-22 to Weidman Dep. Tr., attached hereto as Exhibit 19.

38.     On July 27, 2021, the Dean forwarded Professor Oross' questions regarding Kutzown's planned fall 2021 re-opening Covid-19 protocols to Ms. Weidman, and she responded, based on the planned protocols at that time, to those questions on July 30, 2021 as follows:

    a.      The school had removed the mask requirement, so Professor Oross could ask students to mask but could not require it.

    b.      The school did not have a vaccine requirement, so Professor Oross could not ask students about their vaccination status.

    c.      Professor Oross would be required to hold office hours in person.

    d.      Professor Oross could ask people to sit further away, but classrooms would be back to normal layouts and capacities.

    e.      No changes had been made to existing HVAC systems.

See Exh. 14, SO-22, Email Chain, dated July 26-30, 2021.

39.     On July 27, 2021, the CDC again revised its masking guidelines, to recommend that fully vaccinated individuals mask in indoor public settings in areas of substantial and high COVID-19 transmission. See CDC Statement, dated July 30, 2021, at

https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html, attached hereto as Exhibit 20.

40. On August 2, 2021, Professor Oross emailed Ms. Weidman seeking "approval to conduct [his] fall 2021 courses and office hours remotely." See Exh. 19, SO-12, Email Chain between Oross and Weidman, dated August 2-9, 2021.

41. On August 8, 2021 at 12:59 p.m., Kutztown announced a reinstitution of mandatory masking for all individuals, based on the CDC's revised guidelines and Berks County's increase to a "substantial" level of community transmission. See Email Announcement, dated August 8, 2021, attached hereto as Exhibit 21.

42. Kutztown's "Guide to Fall 2021 Semester" was re-published on August 8, 2021 to reflect the University's reinstated requirement that everyone must wear masks inside all university buildings, regardless of vaccination status. See "Guide to the Fall 2021 Semester," dated August 8, 2021, attached hereto as Exhibit 22.

43. The "Guide to Fall 2021" stated that KU would continue to provide existing health and wellness strategies across campus, including Plexiglass dividers, hand sanitizer, and sanitizing wipes in classrooms, as well as contact tracing, and quarantine/isolation guidelines. See Exh. 22, August 8, 2021 Guide to Fall 2021 Semester.

44. The "Guide to Fall 2021" provided that the University strongly encouraged vaccination and stated the University would host on-campus vaccine clinics during the summer and fall but did not require it. Students were encouraged, but not required, to update the University about their vaccination status. See Exh. 22, August 8, 2021 Guide to Fall 2021 Semester.

45.     Kutztown's COVID-19 plans were developed in collaboration with an expanded emergency management team that included leaders of the faculty union, leaders of the faculty senate, faculty chair of the university safety committee, the director of the university health center, and other staff and administrators, as well as leaders of student government. See Exh. 3, Hawkinson Dep. Tr. at 60-61.

46.     On August 8, 2021, at 5:33 p.m., Ms. Weidman responded to Professor Oross' August 2 email expressing her understanding of his concerns about returning to the classroom, and informing him that there was "no provision for [him] to convert [his] in-person courses to an online modality," explaining that the temporary "the flexible work arrangement" policy only applied to the prior year. See Exh. 19, SO-12 August 2-9 Email Chain.

47.     Ms. Weidman advised that Professor Oross could apply for an ADA accommodation, but explained that "an accommodation is not considered reasonable if it is a fundamental alteration so significant that it changes the essential nature of the goods, services, facilities, privileges, advantages, or accommodations offered." See Exh. 19, SO-12 August 2-9 Email Chain.

48.     Ms. Weidman further stated that Professor Oross could continue his leave contiguous with his FMLA leave from spring, using up to 17 paid sick and personal days and the remainder would be unpaid with benefits. See Exh. 19, SO-12 August 2-9 Email Chain.

49.     On August 9, 2021, Professor Oross responded to Ms. Weidman expressing his displeasure at her "decision to deny [his] request for remote teaching," and asked how Kutztown had decided that "remote teaching constitutes a fundamental alteration." See Exh. 19, SO-12 August 2-9 Email Chain.

50.     Ms. Weidman responded to Professor the same day, stating that her earlier email "should not be construed as a denial of an ADA request," and explained that there was a process to request an ADA accommodation through the Disability Services Office. See Exh. 19, SO-12 August 2-9 Email Chain. Ms. Weidman further explained that the "shift of a course scheduled as in-person to an online modality is the fundamental alteration she referred to, not remote teaching in and of itself." Id.

51.     On August 24, 2021, Kutztown published on its website information relating to the school's COVID-related HVAC plan. See "COVID Related HVAC Operation Plan: 2021-2022," available at https://www.kutztown.edu/about-ku/administrative-offices/facilities/covid-related-hvac-operations-plan.html, attached hereto as Exhibit 23. This Plan stated that it was "first implemented in July 2020 in response to COVID-19," and "was developed based upon CDC guidance and recommendations." Id. The Plan also stated that the University had commissioned a campus wide HVAC IAQ study conducted on September 28, 2020 by an outside engineering firm, which primarily found that the school's "COVID Related HVAC Operations Plan" "meets or exceeds compliance with currently available federal, state and local requirements related to SARS-CoV-2 (COVID) for building occupancy." Id. The Plan further detailed some adjustments Kutztown's Facilities Management had made to the HVAC system to reduce the risk of airborne transmission of COVID-19. Id.

C.     OROSS' ACCOMMODATION REQUEST

52.     Kutztown's published process for "Requesting Employee Accommodations" is coordinated by the Disabilities Services Office ("DSO") upon receipt of an employee's completed request form and supporting medical documentations. See Exh. 19, Weidman Dep. Tr. at 21, SO-16.

53.     If the DSO Director concludes that the employee's medical documentation meets the criteria for a disability under the ADA, she sends an E-mail to HR Director Jennifer Weidman with a description of the requested accommodation. Otherwise the request is denied. See Exh. 19, Weidman Dep. Tr. at 21.

54.     The DSO forwards the request to the Director of HR, Jennifer Weidman, and the Employee Relations Manager, Alexis Martin, describing the accommodation sought, and disclosing limited, if any, information, only as necessary, regarding the nature of the employee's disability and functional limitations so that an appropriate determination on the reasonable accommodation request can be made. See Exh. 19, Weidman Dep. Tr. at 58; Martin Dep. Tr. at 15-17, attached hereto as Exhibit 24.

55.     KU Policy DIV-002 (the ADA Employee Policy") governs the disposition of requests for "Reasonable Accommodation for Employees." See Exh. 19, Weidman Dep. Tr. at 40-41, deposition exhibit "SO-13" at 1-3.

56.     In late July and early August, as faculty requests and informal inquiries to utilize the ADA process to convert in-person classes to online started coming in, Ms. Lantaff, Mr. Peña, Ms. Weidman, and Ms. Martin had conversations to discuss what the school's obligations were with respect to granting or denying these requests. See Peña Dep. Tr., attached hereto as Exhibit 25, at 61-65; Exh. 24, Martin Dep. Tr. at 13; 20-21; 30; Exh. 19, Weidman Dep. Tr. at 38-39.

57.     Based on those discussions, the University determined that the ability to teach in person is an essential function of the faculty position, and converting classes would be a fundamental alteration of the University's course offering to students, thus creating an undue hardship to the school. See Exh. 25, Peña Dep. Tr. at 65; 78; 92-94; 149-150; Exh. 19, Weidman at 72; 79; 92.

58. For the fall 2021 semester, Professor Oross was scheduled by his department chair to teach four classes in person. <u>See</u> Exh. 2, Oross Dep. Tr. at 67.

59. On August 11, 2021, Professor Oross submitted a written accommodation request to the DSO for "approval to teach fall courses and hold office hours on line." <u>See</u> Exh. 24, Martin Dep. Tr. at Dep. Exh. "SO2" at 1.

60. In support of his request, Professor Oross submitted a letter from his doctor stating that, due to his heart transplant, he requires life-long immunosuppressive medications to reduce the risk of organ rejection. <u>See</u> Exh. 24, Martin Dep. Tr. at Dep. Exh. "SO2" at 2. The doctor stated that the first year following transplant requires higher dosages, which also places him at higher risk of infection. <u>Id.</u> The cardiologist "recommended that [Oross] remain in a low risk teaching environment and work remotely to limit his risk of contracting an infection." <u>Id.</u>

61. Ms. Martin sent the Resolution Form to Professor Oross on August 18, 2021, which stated that his accommodation request to convert in-person classes to online had been denied because "changing the course delivery from face-to-face instruction to on-line instruction is a fundamental alteration." <u>See</u> Exh. 24, Martin Dep. Tr. at Dep. Exh. "SO-1".

62. The responsibility for conducting the "interactive process" is ordinarily delegated to the Employee Relations Manager (currently Alexis Martin) with supervision by Ms. Weidman, but Ms. Martin was not as directly involved with Professor Oross' request, which was handled more directly by Ms. Weidman. <u>See</u> Exh. 24, Martin Dep. at 7; Exh. 19. Weidman at 14; 55.

63. Based on the University's position that In late July and early August, as faculty requests and informal inquiries to utilize the ADA process to convert in-person classes to online started coming in, Ms. Lantaff, Mr. Peña, Ms. Weidman, and Ms. Martin had conversations to discuss what the school's obligations were with respect to granting or denying these requests.

<u>See</u> Peña Dep. Tr., attached hereto as Exhibit 25, at 61-65; Exh. 24, Martin Dep. Tr. at 13; 20-21; 30; Exh. 19, Weidman Dep. Tr. at 38-39.

64.     Based on the University's position that the ability to teach in person is an essential function of the faculty position, and converting classes would be a fundamental alteration of the University's course offering to students, thus creating an undue hardship to the school, Ms. Martin prepared the Resolution Form denying Professor Oross' request to convert his fall classes to online, and sent it to Ms. Weidman for review and on August 16. <u>See</u> Exh. 24, Martin Dep. Tr. at 42-44; Dep. Exh. SO-1. Ms. Martin sent the signed Resolution Form to Professor Oross on August 18. <u>Id.</u>

65.     Kutztown's online course offereings are the exception rather than the rule; they are designed to meet specific student need such as offering additional credits during winter and summer months when students are not on campus, or targeting non-traditional students who work all day. <u>See</u> Exh. 25, Peña at 70-71.

66.     Prior to the COVID-19 pandemic, Professor Oross had never taught more than one course online in any semester. <u>See</u> Exh. 2, Oross Dep. Tr. at 28-29.

67.     Prior to the COVID-19 pandemic, none of the classes taught by Professor Oross had been offered exclusively as an online class; all of the classes he taught online were also taught by him in-person in a different section that semester or another semester that school year. <u>See</u> Exh. 2, Oross Dep. Tr. at 33.

68.     On August 24, 2021, Professor Oross sent a letter to President Hawkinson requesting a restoration to health sabbatical for the fall semester under the faculty union contract, which would provide him up to with 18 weeks of leave at full pay. <u>See</u> Exh. 19, Weidman Dep. Tr. at 69-70; Dep. Exh. SO 14. Professor Oross included his cardiologist's letter specifying the

medical necessity for a remote work accommodation. He also summarized HR's refusal to approve his request for reasonable accommodation. Id.

69.     Upon receiving Professor Oross' request, President Hawkinson was "sympathetic to awarding the sabbatical," forwarded it Mr. Peña, Ms. Weidman, and Provost Lorin Basden Arnold, asking them for guidance and input as he had never previously responded to a similar request. See Exh. 3, Hawkinson Dep. Tr. at 93-95; Dep. Exh. "SO-26".

70.     On or about the same day, Dr. Hawkinson spoke to Mr. Peña and Ms. Weidman, who had consulted with PASSHE legal, labor relations, and HR experts, and he advised that Professor Oross' situation did not meet the requirements for a sabbatical for a restoration of health. See Exh. 3, Hawkinson Dep. Tr. at 95; 99; Exh. 19, Weidman Dep. Tr. at 69; Exh. 25, Peña Dep. Tr. at 99. Dr. Hawkinson was advised that the purpose of a sabbatical for "restoration of health" is for someone who is still actively recovering from a serious illness and unable work, which was not Professor Oross' situation because his doctor had released him to return to work full-time. Id.

71.     Based on this information, Dr. Hawkinson made the decision to deny Professor Oross's request for a "restoration of health" sabbatical, despite his personal sympathy for the situation, because he felt that he would not be fulfilling his responsibility as President if he granted a request outside of the university system's stated parameters for the sabbatical. See Exh. 3, Hawkinson Dep. Tr. at 95-96.

72.     Around this same time, Dr. Hawkinson explored some alternative avenues for assisting Professor Oross' situation, which included the possibility of adding two or more new online classes in the psychology department—to start either at the beginning of term or mid-semester--that could be assigned to Professor Oross to teach. See Exh. 3, Hawkinson at 104-105.

73.     Dr. Hawkinson explored the possibility of adding new online classes for Professor Oross with the Provost Lorin Basden Arnold, Union President Tom Stewart, Mr. Peña, and Ms. Weidman. See Exh. 3, Hawkinson Dep. Tr. at 103-108; Dep. Exh. 46 at 8; Exh. 25, Peña Dep. Tr. at 101-102; Exh. 19, Weidman Dep. Tr. at 76-77.

74.     After reviewing the psychology classes for fall and registration numbers, Dr. Hawkinson explored two possibilities for adding new online classes for Professor Oross: first, enrollment in three general psychology classes appeared to have sufficient enrollment to justify adding at least one additional online section that would start at the beginning of the semester; second, the possibility of offering two or more online classes to start mid-semester to give Professor Oross more time to prepare. See Exh. 3, Hawkinson Dep. Tr. at 104.

75.     Dr. Hawkinson believed that the mid-semester classes would meet student need and felt strongly that the classes would meet minimum enrollment, so he believed this to be a good option. See Exh. 3, Hawkinson Dep. Tr. at 105-106.

76.     Dr. Hawkinson discussed these two options for adding new classes to the Provost to explore and with Union President Tom Stewart to discuss with Professor Oross. See Exh. 3, Hawkinson Dep. Tr. at 105.

77.     On August 25, 2021, Dr. Basden Arnold informed Dr. Hawkinson that she had spoken to Jason Lanter, incoming Interim Chair of the Psychology Department, about the possibility of adding new online classes for Professor Oross. See Exh. 3, Hawkinson Dep. Tr. at 109; Dep. Exh. 46 at 9. Dr. Basden Arnold noted that Mr. Lanter was unsure if the idea "meets the needs of the department and also unsure that [Professor Oross] would be interested." Id. She then opined that, the new courses would not have to be a general psychology class if there was a different class psychology class that would better fill student need. Id. Dr. Basden Arnold

suggested that Ms. Weidman reach out to Professor Oross to see if he would be interested in teaching two 8-week high demand courses, and then they could have the Dean and department chair work out the specifics of the course. *Id.*

78.     At this point in time, Dr. Hawkinson authorized Ms. Weidman to offer Professor Oross two 8-week online classes for the fall semester, to start mid-semester, the topic of which was to be determined in conjunction with the Dean and department chair after drop/add closed. See Exh. 3, Hawksinson Dep. Tr. at 109-110; Exh. 19, Weidman Dep. Tr. at 80-81; Exh. 25, Peña Dep. Tr. at 101-103.

79.     In a phone call on August 26th, Ms. Weidman informed Professor Oross that Dr. Hawkinson had denied his request for a sabbatical for a restoration of health because his doctors had cleared him to return to work and therefore the sabbatical did not apply to his situation. See Exh. 2, Oross Dep. Tr. at 95.

80.     During this phone call, Ms. Weidman also told Professor Oross about Dr. Hawkinson's idea of adding two new classes for him to teach in the fall semester, and explained that the two new classes would be determined based on student demand after the drop/add period concluded in the first week of the semester. See Exh. 19, Weidman Dep. Tr. at 76-77; 78; Exh. 2, Oross Dep. Tr. at 92-93.

81.     In an E-mail on Friday, August 27th, Ms. Weidman followed up with Professor Oross on the conversation they had the prior day, reiterating that the "University was considering adding two online courses in Psychology to the fall schedule." See Exh. 19, Weidman Dep. Tr. at 75; Dep. Exh. "SO-15" at 1.

82.     Ms. Weidman did not identify what the classes would be, but explained again that they would be determined based on student need after the drop/add period closed, and said

the specific courses would be decided in conjunction with the department chair and Dean. See Exh. 19, Weidman Dep. Tr. at 76-78;80; Dep. Exh. "SO-15" at 1; Exh. 2, Oross Dep. Tr. at 92-93.

83.     Ms. Weidman explained that this option would allow Professor Oross to work half time and take leave for the other half, partially paid. She encouraged Professor Oross "to discuss this with [his] Chair and [his] dean," and to let her know his decision by 4:30 PM Monday, August 30th. See Exh. 19, Weidman Dep. Exh. "SO-15" at 1

84.     The first day of classes for the fall 2021 semester was August 30, 2021, and the drop/add period ended on September 7, 2021. See https://www.kutztown.edu/Departments-Offices/A-F/Catalog/Documents/Fall2021-msb.pdf

85.     By email on August 30th at 4:11 PM, Professor Oross responded to Ms. Weidman's August 27 email. See Exh. 19, Weidman Dep. Tr. at 80; Dep. Exh. "SO-15" at 2. Professor Oross stated that his Chair saw no high demand for additional courses at this time. See Exh. 19, Weidman Dep. Tr. at 81; Dep. Exh. "SO-15" at 2.

86.     In the e-mail, Professor Oross asked questions about the proposed classes, what the courses would be, when they would start, and how students would know about them, and complained that Ms. Weidman had not given him sufficient details to provide a meaningful basis for a decision, so he was not able to accept or reject her proposal. See Exh. 19, Weidman Dep. Exh. "SO-15" at 2.

87.     Ms. Weidman and Mr. Peña discussed Professor Oross' email and, given the timing of his response, his repeating of questions seeking details that Ms. Weidman had already explained would have to be determined at a later date, and his statement that, without those details he could not accept the offer, they concluded that he was not interested in pursuing this

option and was rejecting the offer. See Exh. 19, Weidman Dep. Tr. at 83-84; Exh. 25, Peña Dep. Tr. at 11, 117.

88.     At 4:47 PM on August 30th, Ms. Weidman replied to Professor Oross that "in light of your response that you are not able to accept our offer," his only option was to continue on sick leave, which would allow his benefits to continue. See Exh. 19, Weidman Dep. Tr. at 82; Dep. Exh. "SO-15" at 4.

89.     At 4:51 PM, Professor Oross responded "so be it." See Exh. 19, Weidman Dep. Tr. at 82; Dep. Exh. "SO-15" at 4.

90.     Thereafter, Professor Oross was approved to continue his full-time FMLA leave with benefits through the fall 2021 semester.

91.     After Professor Oross' accommodation request was denied, he began to speak out publicly, expressing his disagreement with the University's actions. See Exh. 19, Weidman Dep. Tr. at 94.

92.     Through late August and September, Professor Oross made numerous posts on social media, statements to various press outlets, and posts to Kutztown's faculty listserv expressing his disagreement with the University. See Exh. 19, Weidman Dep. Tr. at 94; Exh. 25, Peña Dep. Tr. at 187-123, Exh. 3, Hawkinson Dep. Tr. at 181-182.

93.     On September 14, 2021, Professor Oross submitted an updated serious health condition form as required for his FMLA leave. See Exh. 19, Weidman Dep. Tr. at 102; FMLA Employee Serious Health Condition Certification, dated September 14, 2021, attached hereto as Exhibit 26.

94.     After Professor Oross submitted his serious health form, as a part of the process of approving Professor Oross' FMLA leave, Deborah Longenhagen, Kutztown's leave

administrator, spoke to PASSHE benefits staff to confirm the timeline of Professor Oross' benefits entitlement. <u>See</u> Exh. 19, Weidman Dep. Tr. at 102-103. In response, PASSHE benefits staff informed Ms. Longenhagen that her understanding, and that of Ms. Weidman, as to the timeline of Professor Oross' benefits was incorrect. <u>Id.</u>

95.     PASSHE benefits staff informed Ms. Longenhagen that Professor Oross' entitlement to benefits without pay would end on December 29, 2021. <u>See</u> Exh. 19, Weidman Dep. Tr. at 103. As a result, Ms. Weidman began working with the PASSHE benefits staff to develop a letter to send to Professor Oross to explain this new understanding of his benefits entitlement. <u>See</u> Exh. 19, Weidman Dep. Tr. at 104.

96.     On October 4, 2021, a lawyer with Disabilities Rights of Pennsylvania ("DRP") wrote to Jesus Peña explaining that Kutztown's refusal to provide accommodations to Professor Oross violated federal disability law, and seeking his reinstatement with accommodations, and the restoration of the pay and other benefits that had been withheld since the beginning of his forced leave of absence. <u>See</u> Exh. 25, Peña Dep. Tr. at 56; Dep. Exh. "SO-17."

97.     Upon receiving the letter from DRP, Mr. Peña immediately forwarded the letter to university legal counsel, Michael Ferguson. <u>See</u> Exh. 25, Peña Dep. Tr. at 80.

98.     Mr. Peña informed Dr. Hawkinson that he had received the DRP letter and forwarded it to Mr. Ferguson who would respond to the letter. <u>See</u> Exh. 25, Peña Dep. Tr. at 82-83.

99.     On October 12, 2021, Linda Harrison, PASSHE Assistant Director for Group Benefit and Retirement Programs, sent an email to Ms. Weidman with a draft letter to send to Professor Oross explaining that his benefits entitlement would end on December 29, 2021 and that he must be released to return to full time work. <u>See</u> Exh. 19, Weidman Dep. Tr. at 104-105;

Email Chain Between Weidman and PASSHE Benefits Staff, dated October 12-13, 2021, attached hereto as Exhibit 27 (hereafter "Benefits Email Chain"), at 1-3.

100.    On October 12, Ms. Weidman responded to Ms. Harrison's email, informing her that Professor Oross was scheduled to teach one online class in the winter term and two in the spring 2022 semester, and asked what effect this would have on the benefits calculation. See Exh. 19, Weidman Dep. Tr. at 103-104; Exh. 27, Benefits Email Chain, at 4.

101.    Due to the lengthy full time leave that Professor Oross had taken since January 2021, Professor Oross was currently in an extended leave without pay, with benefits status, and that once on this status. See Exh. 19, Weidman Dep. Tr. at 103. Agnes Peiffer, a member of PASSHE benefits staff, responded to Ms. Weidman's email stating that, once an employee is on the extended full-time leave, such as Professor Oross, that "he must be released full time, full duty" in order to return to work, not part-time; thus Professor Oross would not be allowed to teach the winter class or two classes in spring. See Exh. 19, Weidman Dep. Tr. at 103-104; Exh. 27, Benefits Email Chain, at 4.

102.    Ms. Weidman requested language to add to the letter to explain the situation with the winter and spring classes to Professor Oross, and Ms. Peiffer provided the suggested language. See Exh. Exh. 27, Benefits Email Chain, at 6-8.

103.    On October 13, 2021, Ms. Weidman sent a letter to Professor Oross with the language provided by PASSHE benefits staff. See Exh. 19, Weidman Dep. Tr. at 101; Dep. Exh. "SO-18."

104.    On October 14, 2021, Mr. Ferguson sent a response letter to DRP. See Exh. 25, Peña Dep. Tr. at 118, Dep. Exh. "SO-16." The letter stated in part:

    The University would be more than happy to engage with you in discussions
    regarding Dr. Oross and his request for accommodation. That said, neither the

University nor I will engage with you through written means if Dr. Oross continues to publish all written information in a public manner. While I appreciate Dr. Oross's advocacy for his position, I do not intend to engage in a public relations battle about Dr. Oross's situation.

105. Mr. Ferguson did not consult with Dr. Hawkinson on the letter and Dr. Hawkinson did not review it before it was sent out. See Exh. 3, Hawkinson Dep. Tr. at 193.

106. Mr. Peña did not discuss the specific wording of the letter with Mr. Ferguson, but he understood the above paragraph to mean that Mr. Ferguson would not engage in written discussions with the DRP lawyer, not that the University would not engage directly with Professor Oross. See Exh. 25, Peña Dep. Tr. at 121-125.

107. Ms. Weidman was not aware of the letter from DRP or Mr. Ferguson's response. See Exh. 19, Weidman Dep. Tr. at 98.

108. After Mr. Ferguson's letter, at no time did Mr. Pena or Ms. Weidman refuse to speak to Professor Oross or fail to respond to him. See Exh. 2, Oross Dep. Tr. at 144-145.

109. On October 21, 2021, Professor Oross emailed Ms. Weidman in response to the correspondence she sent on October 13 regarding his benefits entitlement, and asks for clarification as to the meaning of "full-time, full duty." See Exh. 19, Weidman Dep. Tr. at 118; Dep. Exh. "SO-20" at 1.

110. After confirming her understanding of the term, October 27, 2021, Ms. Weidman responded to Professor Oross, explaining that "as teaching in person in the classroom is considered an essential function of your faculty position, a return to full duty would include a release to teach in person in the classroom." See Exh. 19, Weidman Dep. Tr. at 119; Dep. Exh. "SO-20" at 8.

111. On November 15, 2021, Professor Oross initiated the instant lawsuit by filing a Complaint and a Motion for a Temporary Restraining Order ("TRO"), seeking a court order to

reinstate him to full time status with a remote work accommodation so that he would not lose his benefits on December 29, 2021. (ECF No. 1-2.)

112.     On December 14, 2021, the Court, after finding that Professor Oross would likely suffer irreparable harm if he medical benefits expired on December 29, 2021, issued a TRO, ordering Kutztown reinstate Professor Oross to full time with a remote work accommodation. (ECF No. 8)

113.     Professor Oross was reinstated immediately to teach his winter class online, and has taught a full course load online in spring 2022 semester and the current fall 2022 semester. See Exh. 2, Oross Dep. Tr. at 150.