IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN OROSS,<br>                **Plaintiff,**<br><br>v.<br><br>KUTZTOWN UNIVERSITY, et al.,<br><br>           **Defendants.** | CIVIL ACTION<br>No. 21-5032 |

**MEMORANDUM**

**SCHMEHL, J.   /s/ JLS**                                                                                                                                                              **JANUARY  8, 2024**

       Plaintiff, a tenured Associate Professor of Psychology at Defendant Kutztown University ("Kutztown" or the "University"), brought this action claiming the Defendants Kutztown and its President, Dr. Kenneth Hawkinson ("Dr. Hawkinson") and its Vice President for Equity, Compliance, and Liaison for Legal Affairs, Jesus Pena ("Mr. Pena") violated Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, when they denied his request for a remote work accommodation for the Fall Semester of 2021. Plaintiff claims that in denying his request, the Defendants refused to consider his individual circumstances of having recently undergone a heart transplant that requires life-long immunosuppressive medications to reduce his risk of organ rejection and which place him at a higher risk of contracting COVID-19 and instead relied on a recently formulated general policy that any request to change the course modality from in-person to remote would be considered a substantial alteration to the course offerings and would represent an undue hardship to the University. Plaintiff also claims the Defendants failed to

engage in the interactive process and retaliated against him when he publicly expressed his dissatisfaction with the denial of his accommodation request.

The Complaint consisted of the following 12 counts: Failure to Accommodate (Count One); Facial Invalidity of Defendants' Full-duty Requirement (Count Two); Intentional Discrimination Because of Disability (Direct Evidence)(Count Three); Intentional Discrimination Because of Disability (Pretext) (Count Four); Disparate Impact based on Prohibited Standards, Criteria, or Methods of Administration (Count Five); Kutztown University's Retaliation and Interference under Section 504(Count Six); Section 504 Retaliation and Interference Claims against Dr. Hawkinson (Count Seven); 42 U.S.C. Section 1983 claims against Dr. Hawkinson for Deprivation of Federal Statutory Rights under Section 504 (Count Eight); Section 1983 Claims against Dr. Hawkinson for Violations of First and Fourteenth Amendments (Count Nine); Mr. Pena's Retaliation and Interference under Section 504 (Count Ten); Section 1983 Claims against Mr. Pena for Violations of Plaintiff's Federal Statutory Rights under Section 504 (Count Eleven)  and Section 1983 Claims against Mr. Pena for First Amendment Violations (Count Twelve).

Both Plaintiff and the Defendants filed motions for summary judgment. In granting and denying both motions in part, the Court entered judgment in favor of Plaintiff and against Defendants on Counts I, II, III, IV, VI (interference), of the Complaint [ECF 69 and 70]. The Court also entered judgment in favor of the Defendants and against the Plaintiff on Counts V, VII, VIII, IX, X, XI, XII of the Complaint. *Id*. Finally, the Court ordered that Plaintiff's request for emotional and punitive damages under the Rehabilitation Act (RA) be stricken from the Complaint. *Id*.

Even though the Court found in his favor on his major claims, Plaintiff has filed a motion pursuant to Fed.R.Civ.P. 54(b) for partial reconsideration of some of the claims on which the Court found in favor of the Defendants. For the reasons that follow, the motion is granted in part and denied in part.

"The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 93d Cir. 1999 (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* (citation omitted).

Plaintiff first contends that the Court erred when it dismissed Plaintiff's disparate impact claim under the RA in Count V of the Complaint on the basis that Plaintiff did not submit any statistical evidence to support this claim. According to Plaintiff, a plaintiff may prove his prima facie case for disparate impact under the ADA and RA by simply establishing that he alone was "screened out" in violation of 42 U.S.C. § 12112(b)(6)[1], and therefore no supporting statistical evidence is required. The Court agrees.

The "disparate impact" theory of liability is based on the premise that "some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth*

---

[1] The Rehabilitation Act incorporates the standards contained in Title I of the ADA for the purpose of determining whether an alleged act of employment discrimination constitutes a violation of the Rehabilitation Act. 29 U.S.C. § 794(d).

3

*Bank and Trust,* 487 U.S. 977, 987 (1988). To make out a *prima facie* case of typical disparate impact discrimination under Title VII, a plaintiff must: (1) identify the challenged employment practice or policy and pinpoint the defendant's use of it; (2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(i).To prove the second element, Plaintiff would normally have to produce statistics or some equivalent measure. *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, F. 2d 792, 798 (3d Cir. 1991).

Unlike Title VII, 42 U.S.C. § 12112(b)(6) prohibits "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selective criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity."

To establish a *prima facie* disparate impact claim under § 12112(b)(6) of the ADA a plaintiff must (1) identify the challenged employment practice or policy, (2) demonstrate that the practice or policy had an adverse impact on the plaintiff with a disability, and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *See Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 839 n. 26 (5th Cir. 1999). In the ADA context, unlike in the Title VII context, a plaintiff may satisfy the second prong of his prima facie case by demonstrating an adverse impact on **himself** rather than on an **entire group**. *Id. citing* 1 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 333–34 (3d ed.1996);  *see also Bryan v. Wal-Mart Stores, Inc.*, 669 Fed.App'x. 908, 909 (9th Cir. 2016);*EEOC v. Dolgencorp, LLC*, 2022 WL 2959569, at *8 (N.D. Ala. July 26, 2022); *Leskovisek by next friend Stanley v. Illinois Department of Transp.*, 506 F. Supp. 3d 553, 569 (C.D. Ill. 2020);

*Williams v. ABM Parking Servs. Inc.*, 296 F. Supp. 3d 779, 789–90 (E.D. Va. 2017) ("[A]n individual advancing an ADA disparate impact claim need not present statistical evidence if he or she can show that a job qualification screens out the plaintiff on the basis of his or her disability.")

Here, the undisputed record revealed that Plaintiff identified the challenged policy as the University's full-time full-duty policy. Plaintiff also clearly demonstrated that the full-time full-duty policy had an adverse impact on himself by demonstrating that he was: "1) denied a reasonable accommodation of remote teaching and office hours which forced him to use up the reminder of his paid leave and into an unpaid leave status for the Fall Semester of 2021; 2) denied a restoration of health sabbatical which also forced him to use up the remainder of his paid leave and into an unpaid leave status for the Fall Semester of 2021; and 3) informed that a "full time, full duty" release meant returning to work in-person which not only also forced him to use up the remainder of his paid leave and forced him into an unpaid leave status for the Fall Semester of 2021, but also forced him to give up his medical benefits as of December 29, 2021 and limited his return to work rights." ECF 69 at p. 40.[2]

Finally, the record established a causal connection between the full-time, full-duty policy and the disparate impact on Plaintiff. *Id*. at pp. 43-44 ("Instead, the record reveals that Mr. Pena, Ms. Weidman and Ms. Martin simply denied the Professor's request for an accommodation based on their recently devised mantra that any accommodation request that would change the modality for a scheduled class would fundamentally alter the course and therefore place an undue burden on the University. Clearly, allowing

---

[2] Defendants' contention that § 12112(b)(6) of the ADA does not apply to Plaintiff because he was not actually "screened out" from applying for any position at Kutztown since he was already working there as an Associate Professor of Psychology ignores the fact that application of Defendants' full-time, full-duty policy to Plaintiff would have been effectively eliminated Plaintiff from keeping his position had he not brought this lawsuit.

Professor Oross to teach only four courses and conduct his office hours online during the Fall 2021 Semester when the University offers 1700 classes each semester, the vast majority of which are in-person, would not have fundamentally altered the University's pedagogical model.").

Once Plaintiff established these three elements, the burden shifted to Defendants to identify a business necessity for the challenged policy. "To assert a business necessity defense, the defendants must show that the allegedly discriminatory qualification requirement is (i) job-related, (ii) consistent with business necessity, and (iii) that performance cannot be accomplished with a reasonable accommodation." *Williams*, 296 F. Supp. 3d at 790 (citing *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 993 (9th Cir. 2007)). As explained in detail in the Court's Memorandum, Defendants failed to demonstrate any of these elements. ECF 69 at pp. 40-41. Therefore, the Court will vacate its grant of summary judgment in favor of defendants on Count V and instead, based on the undisputed record, enter summary judgment in favor of Plaintiff on Count V.

In its Memorandum, the Court found that Defendant Hawkinson was entitled to summary judgment on Count VIII of the Complaint and Defendant Pena was entitled to summary judgment on Count XI both of which asserted claims under 42 U.S.C. § 1983 for violation of Plaintiff's federal statutory rights under Section 504 of the RA. ECF 69 at p. 53. In doing so, the Court relied on the decision from our Court of Appeals in *A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir. 2007) which held that there is no cause of action under 42 U.S.C. § 1983 to address a violation of Section 504 of the RA where, as here, the §1983 claim is based on the same factual predicate as the claim under Section 504 of the RA. *Id*. at 806 ("There is nothing in Section 504 that . . .

causes us to conclude that Congress intended to allow §1983 to be available to remedy Section 504 violations such as those alleged by A.W.").

Plaintiff contends that the Third Circuit's decision in *A.W.* was somehow "abrogated" by the United States Supreme Court in *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009) and in *Health & Hosp. Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023). In *Fitzgerald*, the Supreme Court examined the enforcement scheme of **Title IX of the Education Amendments of 1972**, not the **RA**, and held that there is nothing in the enforcement scheme of **Title IX** that would demonstrate that Congress did not intend to allow for parallel actions under Title IX and 42 U.S.C. § 1983. *Id*. at 186 n.13. Indeed, the Supreme Court did not once mention the *A.W.* decision in its Opinion.

In fact, the United States Court of Appeals for the Second Circuit just recently cited the *A.W.* decision as persuasive authority for its own holding that section 1983 may not be used to enforce the rights provided in the RA. *Costabile v. N.Y. City Health & Hosp. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020) (agreeing with all Circuits to have addressed the issue, including the Third Circuit in *A.W.*, that § 1983 cannot be used to alter the categories of persons potentially liable in private actions under the RA); *see also Fanciullo v. U.S. Postal Service*, 2013 WL 5467169 at *4 (D.N.J. Sep. 30, 2013) (dismissing § 1983 claims against individual defendant alleging employment discrimination in violation of Section 504 of the Rehabilitation Act).

In *Talevski*, the Supreme Court examined the remedial scheme of the **Federal Nursing Home Reform Act ("FNHRA"),** not the **RA**, and found that there was nothing in the scheme that demonstrated that Congress intended to preclude enforcement of a right under the **FNHRA** by a §1983 action. 599 U.S. at 191. At no time did the Court address the remedial scheme of the RA.

7

In short, *A.W.* was never "abrogated" by the Supreme Court and remains the law of this Circuit. Although the RA may have a similar remedial scheme to the remedial schemes in Title IX and the FNHRA, if *A.W.* is to be overturned or abrogated, it must be done so by either the Third Circuit or the Supreme Court, not by this Court.

Plaintiff next contends that the Court committed error when it summarily found that Plaintiff's claims for emotional damages are barred by the RA. In *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212 (2022), the Supreme Court held that emotional damages are not available under Section 504 of the RA. because such damages are not traditionally available in contract law such that federal funding recipients would have clear notice that they may face such a remedy. *Id*. at 223, 230.

Plaintiff argues that since *Cummings* was a public accommodation case, the Court only interpreted the remedies provided in section 794a(a)(2) of the RA. That section provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. 794a(a)(2). Plaintiff argues that since the case *sub judice* is an action for employment discrimination it is governed by the remedies contained in section 794a(a)(1) of the RA. That section provides that the procedures, rights, and remedies available to **federal employees** under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16) are available "with respect to any complaint under **section 791** of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint . . ." 29 U.S.C. § 794a(a)(1) (emphasis added.). However, by its own terms, section 794a(a)(1) only applies to employment discrimination claims

8

brought under section 791 of the RA. Section 791's coverage is limited to employment discrimination claims brought against **federal agencies** such as the Postal Service. 29 U.S.C. §791. Therefore, section 741a(a)(1) does not apply to employment discrimination claims brought against recipients of federal funds such as Kutztown. Employment discrimination claims against those entities are covered by section 794a(a)(2). *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 631-632 (1984). Since the Supreme Court has ruled that emotional damages are not available under that section of the RA, the Court properly dismissed Plaintiff's claims for emotional damages under the RA.

      Finally, Plaintiff argues that the Court erroneously found in favor of Defendants Hawkinson and Pena on Plaintiff's First Amendment retaliation claims contained in Counts IX and XII of the Complaint. Plaintiff does not raise any new issues of fact or of law. Rather, Plaintiff simply is seeking to relitigate a matter on which it disagrees with the Court. Such a request is not properly a part of a motion for reconsideration. See *Boretsky v. Governor of N.J.*, 433 Fed.App'x. 73, 78 (3d Cir. 2011) (non-precedential).

      For the foregoing reasons, the Plaintiff's motion for reconsideration is granted as to Count V of the Complaint and denied in all other respects.