IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN OROSS, III, : | | |
| Plaintiff, : | | |
| : | | |
| v. : | | Civil No. 5:21-cv-05032-JLS |
| : | | |
| KUTZTOWN UNIVERSITY, *et al.*, : | | |
| Defendants. : | | |

## MEMORANDUM

**SCHMEHL, J. -** */s/ JLS*                                                         **DECEMBER 16, 2025**

Presently before the Court is Plaintiff's motion for attorney's fees in the amount of $896,742.00[1] pursuant to Section 794a of the Rehabilitation Act of 1973. The Court heard oral argument on the motion. For the reasons that follow, the motion is granted but with some modifications to the amounts requested.

## BACKGROUND

Plaintiff, a tenured Associate Professor of Psychology at Defendant Kutztown University ("KU"), brought this action claiming KU and its President, Dr. Kenneth Hawkinson, and its Vice President for Equity, Compliance, and Liaison for Legal Affairs, Jesus Pena, violated Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, when they denied his request for a remote work accommodation for the Fall Semester of 2021. Plaintiff claimed that in denying his request, the Defendants refused to consider his individual circumstances of having recently undergone a heart transplant that requires life-long immunosuppressive medications to reduce his risk of organ rejection and which place him at a higher risk of contracting COVID-19 and instead relied on a recently formulated general policy that any request to change the course modality

---

[1] Counsel subsequently filed a Bill of Costs with the Clerk of Court seeking recovery of costs in the amount of $4170.85. On September 8, 2025, the Clerk entered Judgment in favor of Plaintiff in the amount of $4170.85. [ECF 118.]

1

from in-person to remote would be considered a substantial alteration to the course offerings and would represent an undue hardship to the KU. Plaintiff also claimed the Defendants failed to engage in an interactive process and retaliated against him when he publicly expressed his dissatisfaction with the denial of his accommodation request.

The Complaint consisted of the following 12 counts: Failure to Accommodate (Count One); Facial Invalidity of Defendants' Full-duty Requirement (Count Two); Intentional Discrimination Because of Disability (Direct Evidence)(Count Three); Intentional Discrimination Because of Disability (Pretext) (Count Four); Disparate Impact based on Prohibited Standards, Criteria, or Methods of Administration (Count Five); Kutztown University's Retaliation and Interference under Section 504(Count Six); Section 504 Retaliation and Interference Claims against Dr. Hawkinson (Count Seven); 42 U.S.C. Section 1983 claims against Dr. Hawkinson for Deprivation of Federal Statutory Rights under Section 504 (Count Eight); Section 1983 Claims against Dr. Hawkinson for Violations of First and Fourteenth Amendments (Count Nine); Mr. Pena's Retaliation and Interference under Section 504 (Count Ten); Section 1983 Claims against Mr. Pena for Violations of Plaintiff's Federal Statutory Rights under Section 504 (Count Eleven) and Section 1983 Claims against Mr. Pena for First Amendment Violations (Count Twelve).

On December 14, 2021, the Court granted the Plaintiff's request for a temporary restraining order ("TRO") and directed Defendants to reinstate Plaintiff to full active duty with a remote work accommodation and enjoined them from terminating Plaintiff's medical benefits on, or before, or at any time after December 29, 2021 without further Order from the Court. [ECF 8.] The Court also found that there was a substantial likelihood that the Plaintiff would succeed on the merits of his claim against the Defendants. *Id.*

Both Plaintiff and the Defendants filed motions for summary judgment. In granting and denying both motions in part, the Court entered judgment in favor of Plaintiff and against Defendants on Counts I, II, III, IV, and VI (interference) of the Complaint [ECF 69 and 70]. The

Court also entered judgment in favor of the Defendants and against the Plaintiff on Counts V, VII, VIII, IX, X, XI, XII of the Complaint. *Id*. Finally, the Court ordered that Plaintiff's request for emotional and punitive damages under the RA be stricken from the Complaint. *Id***.**

Plaintiff filed a motion for reconsideration as to some of the Counts the Court had entered judgment in favor of Defendants. [ECF 71.] The Court granted the motion in part and denied the motion in part and entered judgment on Count V (disparate impact) in favor of Plaintiff. [ECF 76.] As a result, the only remaining Defendant was KU.

The Court entered a Final Judgment on January 21, 2025 that awarded Plaintiff Back Pay in the amount of $41,296.56; Retroactive Employer Contributions to Plaintiff's Retirement Fund in the amount of $3,615.21; Payment for Lost Value to Retirement Account in the amount of $1,508.42; Restoration of 27.5 days of Sick Leave; Restoration of 3 days of Paid Time Off Leave; Restoration of any seniority and/or years of service Plaintiff lost during the 2021 Fall Semester when he was placed on Leave Without Pay Status as well as significant remedial and prospective injunctive relief.[2] [ECF 104.]

**LEGAL STANDARD**

Congress has "unambiguously authorized the award of attorneys' fees to a prevailing party in any action commenced under certain statutes including the Rehabilitation Act." *Ward v. Philadelphia Parking Authority*, 634 Fed.App'x. 901, 903 (3d Cir. 2015) (citing 42 U.S.C. § 12205; 29 U.S.C. § 794a(b)).[3] In order to be considered a prevailing party, a party must have

---

[2] This relief included the admonition that "Defendants shall rescind its no-remote work accommodations rule, policy and/or practice pursuant to which it has denied remote accommodations to faculty as a matter of institutional policy that any request to change the course modality from in-person to remote would be considered a substantial alteration to the course offerings and would represent an undue hardship to the University. Instead, Defendants must adhere to the requirements of Section 504 of the Rehabilitation Act, the Americans with Disabilities Act and EEOC Regulations that any decision to grant or deny remote accommodations must be based on individualized circumstances unless Defendants can produce individualized evidence that such accommodation would constitute an undue hardship to the University as defined by those statutory terms." [ECF 104.]
[3] 29 U.S.C. § 794a(b) ("In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.").

3

succeeded on a significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"[T]he guiding light of [federal] fee shifting-jurisprudence" is the lodestar method. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542, 551 (2010). A lodestar award is calculated by multiplying the number of hours counsel reasonably worked on his or her client's case by a reasonable hourly billing rate given the attorney's experience, the nature of the services rendered, and the geographical region in which they were provided. *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019). The party opposing the fee has the burden of challenging the requested fees by affidavit or brief with sufficient specificity to give the fee applicants notice of the challenge. *Rode v. Dellarcipete*, 892 F.2d 1177, 1183 (3d Cir 1990). "The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" *Id*. (quoting *Bell v. United Princeton Properties, Inc*., 884 F.2d 713, 720 (3d Cir. 1989)). Nonetheless, the court retains the discretion to modify the lodestar and may adjust it downward if it is unreasonable in light of the results obtained. *Rode*, 892 F.2d at 1183 (3d Cir.1990).

The party requesting attorney's fees "bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997). The initial burden of "producing sufficient evidence" of such rates falls to the plaintiff, but the defendant may contest plaintiff's claims "with appropriate record evidence." *Id.* Without such evidence "plaintiff must be awarded attorney's fees at her requested rate." *Id.*

**DISCUSSION**

KU does not dispute that Plaintiff was a prevailing party in this action. However, KU argues that the amount of attorney's fees requested should be reduced based on "the attorneys'

overly high hourly rates; hundreds of excessive hours billed by counsel; and Plaintiff's only partial degree of success in this lawsuit." [ECF 109, p. 4.]

Plaintiff was represented in this case by Lorrie McKinley, Esq. a partner in the law firm of McKinley & Ryan, LLC. and by Ralph Lamar, Esq., a partner in the Law Firm of Ralph Lamar. In her 26-page invoice, Attorney McKinley seeks a total of $773,074.50 in counsel fees. [ECF 105-5.] She is seeking compensation for 909.5 hours. Meanwhile, in his Declaration, Attorney Lamar seeks a total of $123,667.50 in counsel fees. [ECF 105-7, ¶ 24.] He is seeking compensation for 149.9 hours.

KU argues that Attorney McKinley's hourly rate of $850 per hour and Attorney Lamar's hourly rate of $825.00 are excessive, especially since both attorneys are seeking recovery of attorney's fees.

The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 726 F.3d 403, 413 (3d Cir. 2013). To determine the prevailing market rate, "a court must 'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.,* 426 F.3d 694, 708 (3d Cir. 2005) (quoting *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 180 (3d Cir. 2001)).

The Community Legal Services ("CLS") fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). This Court also finds that the CLS fee schedule is representative of the prevailing market rates for lawyers of comparable skill, experience, or reputation in the Eastern District of Pennsylvania. The 2023 CLS Fee Schedule sets the hourly range for attorneys with more than 25 years of experience at between $735.00 and $850.00. At the time, the petition for attorney's fees was filed, Attorney McKinley had been practicing law

5

for approximately 40 years while Attorney Lamar had been practicing law for approximately 34 years. In her Declaration, Attorney McKinley seeks an hourly rate of $850.00 "[b]ased on [her] long experience as an employment and civil rights lawyer, [her] particular expertise in the area of disability discrimination law under Section 504 and the ADA, and [her] expertise in the types of issues in this case." [ECF 105-3, ¶ 18.] In his Declaration, Attorney Lamar attests that "[i]t is [his] belief and opinion that based upon the scarcity of plaintiff's attorneys who are willing to take cases of these types, the significant risk of loss, the significant delay in getting compensated, the unusual vigor with which these cases are defended . . . that $825.00 is a reasonable hourly rate for [his] work in this case." [ECF 105-7, ¶ 21.] Attorney McKinley has also submitted declarations from three experienced civil rights practitioners who attest that they are familiar with the work of Attorneys McKinley and Lamar and that their respective rates of $850.00 and $825.00 are consistent with the prevailing market rates for attorneys of comparable experience and ability in employment discrimination cases. [ECF 105-10, 105-11, 105-12.] KU has not submitted any record evidence to the contrary.

KU requests, without any basis, that Attorney McKinley should be paid at a rate of $792.00 per hour simply because that number falls in the middle of the CLS hourly range of $735.00 to $850.00 for attorneys with more than 25 years of experience. Chief Judge Beetlestone just recently approved a rate of $850.00 for Attorney McKinley as the attorney for a prevailing party in a fee-shifting case brought under the Equal Pay Act, 29 U.S.C. § 206(d). *Foley v. Drexel University*, 2025 WL 2177808 at * 5 (E.D. Pa. July 31, 2025). ("Lorrie McKinley claims a rate of $850, the highest amount possible in the CLS guidelines, but the Court finds this an appropriate level given her decades of experience litigating like cases.") This Court agrees.

KU then argues, however, that Attorney Lamar should be paid at a rate of $565.00 per hour based on a fee request Attorney Lamar made in 2011 for an hourly rate of $400.00 with an adjustment for 14 years of inflation bringing the requested rate to $565.00. See *D'Orazio v. Washington Twp.*, C.A. No. 07-5097, 2011 WL 6715635, at *3 (D.N.J. Oct. 18, 2011), report &

rec. adopted in part, 2011 WL 6717427 (D.N.J. Dec. 21, 2011), aff'd in part, remanded in part on other grounds, 501 F. App'x 185 (3d Cir. 2012) ("Ms. McKinley indicates that she is aware of Mr. Lamar and his rate of $400 per hour is reasonable for the southeastern Pennsylvania community.")

Our Court of Appeals has instructed that, when calculating the amount of attorneys' fees to be awarded under a fee-shifting statute, "the current market rate must be used." *Lanni v. New Jersey,* 259 F.3d 146, 149 (3d Cir.2001) (*citing Rode,* 892 F.2d at 1183). It has defined the current market rate in this context to be "the rate at the time of the fee petition, not the rate at the time the services were performed." *Lanni,* 259 F.3d at 149-50 ("A current market rate is exactly that-a reasonable rate based on the currently prevailing rates in the community for comparable legal services."). In 2011, Attorney Lamar had only 20 years of experience and skill whereas he now has 34 years of experience and skill which entitles him to a rate based on the CLS scale of between $735.00 and $850.00. Therefore, the rate request Attorney Lamar made back in 2011 is simply irrelevant. The Court finds that Attorney Lamar's requested rate of $825.00 is appropriate given his decades of experience and success in litigating disability discrimination cases.

KU objects to the number of hours billed by both attorneys as "grossly" excessive. Specifically, KU argues that

> Plaintiff's lead counsel, Attorney McKinley, seeks compensation for 909.5 hours – that is, almost six months of billing on nothing other than this lawsuit (909.5 ÷ 40 hours per week = 23 weeks) – in a lawsuit that was resolved at summary judgment and never reached the point where the Court set a trial date. Her co-counsel, Attorney Lamar, seeks compensation for 149.9 hours. Although Mr. Lamar's billed time constitutes only 14 percent of the total time being billed it nonetheless is a full month's worth of legal work – a surprisingly high amount, given that both attorneys are considered legal "titans" nationally according to their supporting affiant, Scott M. Pollins.

[ECF 109, pp. 5-6.]

In her Declaration, Attorney McKinley attests that "[b[ased on [her] experience and professional opinion, Counsel devoted the time and attention to the case that was necessary to

7

secure summary judgment on Dr. Oross's disability claims by way of an offensive motion for summary judgment, followed by a very meaningful remedial order that included, among other things, highly tailored prospective injunctive relief." [ECF 105-3, ¶ 31.]

      The Court finds that the majority of the hours expended by Attorney McKinley and Attorney Lamar on this case were reasonable as they did a thorough job in securing a judgment in their client's favor.  At the time, Attorney McKinley filed this case, Plaintiff was in danger of losing not only his tenured position as Associate Professor of Psychology but also losing all of his medical benefits. The latter was particularly crucial to Plaintiff given the costs involved with his life-long immunosuppressive medications. The December 14, 2021 TRO directed KU to restore Plaintiff to active duty with a reasonable work accommodation and prohibited KU from terminating his medical benefits. Despite the Court's granting of the TRO, the Defendants wanted to go the mat in defending this case. Indeed, even after the Court granted summary judgment in favor of the Plaintiff on seven of the 12 claims, KU refused to acknowledge its unlawful policy and instead even considered demanding the recusal of this Court from any further proceedings.

      KU fought this matter tooth and nail from the day the case was filed until the day the Final Judgment was entered. And even after the Final Judgment was entered, the decision as to whether KU planned to file an appeal came down to the final deadline. Attorneys McKinley and Lamar worked tirelessly to expose an inflexible and unsubstantiated blanket policy by KU and the individual Defendants that summarily denied, without considering the individual circumstances of the requestor, **any** request for a remote work accommodation during the COVID-19 pandemic as interfering with the University's pedagogical model of being a primarily a face-to-face institution. After steadfastly refusing to acknowledge the existence of this policy throughout the litigation, Defendant cannot now complain that the hours expended by Attorneys McKinley and Lamar in uncovering this policy were unreasonable. Moreover, the facts of this case were novel, even for attorneys with 40 years of experience in disability law, in that it was

one of the first cases that addressed the denial of remote work as a disability accommodation during a pandemic. The fact that Plaintiff was the recipient of a recent heart transplant that requires life-long immunosuppressive medications to reduce his risk of organ rejection and which place him at a higher risk of contracting COVID-19 made the case even more unique. Finally, it must be noted that Attorneys McKinley and Lamar took on a significant amount of risk by taking this case on a contingency fee basis against a large institution which defended itself with uncommon vigor.

The Court will address the certain instances that KU contends demonstrate excessive billing.

First, KU objects to the 96 hours billed by Attorney McKinley and 6.8 hours billed by Attorney Lamar for preparing and researching the motion for attorney's fees as "beyond the pale, especially given that such highly experienced counsel surely was not starting from scratch in drafting the petition." [ECF 109, p. 7.]

KU does not dispute that Plaintiff's counsel is entitled to reimbursement for litigating their fee petition. *See Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey,* 297 F.3d 253, 268 (3d Cir.2002)  Indeed, KU cites several decisions from this district that have even awarded over twenty hours to counsel for time expended on preparing an initial fee petition. *See, e.g., Trucksess v. Thompson Auto. Grp., Inc.,* 2011 WL 6415047, at *5-6 (E.D.Pa. Dec. 14, 2011) (awarding over thirty hours for time expended on preparing the fee petition); *Gonzalez v. Bustleton Servs., Inc.,* 2010 WL 3282623, at *3 (E.D.Pa. Aug. 18, 2010) (awarding over twenty hours for time expended on preparing the fee petition); *Ryan P. ex rel. Christine P. v. Sch. Dist. of Philadelphia,* 2008 WL 724604, at *5 (E.D.Pa. Mar. 18, 2008) (awarding a total of 64.25 hours, including twenty hours for time expended on preparing the fee petition, in an IDEIA case).

However, Plaintiff's counsel has surely prepared numerous such fee petitions during their decades of practice. Therefore, any time spent on research for such a petition should have been

9

minimal. While the Court recognizes that this case lasted over three years, it simply should not have taken counsel a total of 104.8 hours to put the fee petition together. As a result, the Court will reduce the hours allowed for preparation of the fee petition for Attorney McKinley from 96 to 33.2, a reduction of 62.8 hours, which when combined with the 6.8 hours billed by Attorney Lamar, results in total compensable time for preparation of the fee petition to 40 hours (33.2 and 6.8).

KU next argues that the number of hours Attorney McKinley devoted to a focus group (80.4) were unreasonable since they are more than the hours Attorney Lamar spent with the focus group. KU asks the Court to reduce the number of hours Attorney McKinley is entitled to be compensated for the focus group from 80.4 to 48.8.

Attorney McKinley claims the focus group was a "hugely influential event in the case that helped Plaintiff's counsel prepare for settlement discussions and for summary judgment." [ECF 110, p. 9.] She claims that she was the one who presented Plaintiff's case to the mock jury while Attorney Lamar represented the Defendants and that preparation for Plaintiff's side required more hours. *Id*. The Court finds no unnecessary duplication with respect to the focus group.

KU next contends that the 237 hours Attorney McKinley expended to discovery are "quite excessive." Yet, Defendants contend that only 25.9 of those hours are excessive. The Court does not agree with KU's contention that the number of hours expended on discovery are excessive since this case involved only one Plaintiff. The Court also recalls numerous conference calls with counsel over the nature and scope of discovery and KU's intransigence in responding to Plaintiff's discovery requests.

KU has pulled eight random time entries from Attorney McKinley's 26-page invoice as indicative of spending excessive time on discovery. These include billing at a rate of $850.00 per hour for emails, telephone calls, research and consultation. The Court notes that if Attorney McKinley had not been spending time on this case, she would have been spending her time on

10

other cases that she could have billed for. KU merely argues, without explanation, that these entries should be eliminated or reduced. In the absence of any specific objections by KU, the Court will not eliminate or reduce these entries.

KU next contends that half of the time Attorney McKinley spent preparing the Plaintiff for his deposition was unnecessary. Attorney McKinley states that the Plaintiff's deposition was originally scheduled for July 13, 2022. [ECF 110, pp. 12-13.] She claims she spent 5.9 hours preparing Plaintiff on July 5, 2022 and another 8 hours preparing him on July 6, 2022. *Id*. The deposition was then rescheduled for July 28, 2022. *Id*. She claims that because there were now additional discovery documents to review she spent another 2 hours on July 27, 2022 preparing Plaintiff for the deposition. *Id*. The deposition was rescheduled again for August 12, 2022. *Id*. She claims she had a Zoom meeting with Plaintiff on August 5, 2022 to review additional discovery documents. *Id*. She claims she met with Plaintiff again for 1.8 hours on August 11, 2022 and for 1 hour on the morning of August 12, 2022. *Id*. The Court finds that the original 5.9 hours as well as the subsequent hours to refresh the Plaintiff for his deposition are reasonable but that the 8 hours in preparation time on July 6, 2022 to be excessive. Accordingly, these 8 hours will be deducted from Plaintiff's total amount of billable hours.

KU argues that Attorney Lamar's time spent on discovery should be reduced by 20.2 hours because of the "secondary role" he played as co-counsel. The Court agrees with Attorney McKinley that Attorney Lamar's secondary role has already been accounted for by the time he spent on discovery in relation to Attorney McKinley. *See Ridley v. Costco Wholesale Corp*. 217 Fed. App'x 130, 138 (3d Cir. 2007). ("However, Matos' limited role is already reflected in the number of hours she billed on the case.") Therefore, the Court will not reduce Attorney Lamar's requested hours by 20.2.

KU next claims that the 27.8 hours Attorney McKinley billed and the 3.5 hours Attorney Lamar billed for preparing and filing a totally unnecessary motion to strike should be stricken. The motion sought to strike Defendants' motion for summary judgment on the basis that it was

11

filed nearly seven hours after the Court's October 14, 2022 deadline for dispositive motions had expired and because it did not contain a statement of undisputed facts, an Appendix and any references to the evidentiary record as required by this Court's Police and Procedures. [ECF 58.] In fact, Defendants did not file an Appendix or Statement of Undisputed Facts until October 21, 2022. [ECF 56.] Attorney McKinley characterizes the motion to strike as "a extraordinary, once in a career motion brought by Plaintiff's counsel after much deliberation and in the face of extraordinary circumstances." [ECF 110, p. 14.] While the Court cannot characterize the motion as unnecessary given the amount of extra time the Court had to spend parsing the record in the absence of a joint stipulation of facts, the Court will characterize the 31.3 hours counsel spent preparing it as excessive. The motion was essentially only four pages in length while the Memorandum in support of the motion was essentially only six pages in length and did not require hours of research to prepare. Therefore, the Court will reduce the reasonable and allowable hours for Attorney McKinley in preparing the motion from 27.8 to eight (8). The 3.5 hours billed by Attorney Lamar shall remain.

  KU next contends that the number of hours Attorney Lamar billed for conferencing with Attorney McKinley were excessive. These include 29.9 hours of telephone conferences, 2.5 hours of in-person meetings and 40.8 hours for email correspondence for a total of 73.2 hours. Considering that this case took over three full years to conclude and that Attorneys McKinley and Lamar were essentially the only attorneys representing the Plaintiff, the Court does not find such hours to be excessive. However, the Court does find that, given that Attorney McKinley is billing at a rate of $850.00 per hour and Attorney Lamar is billing at a rate of $825.00 per hour, it would be unreasonable to make KU liable for time spent on both sides of the correspondence and conferencing. Therefore, the Court finds that KU should be liable for one-half of the billable hours (73.2 hours) related to communication between Attorney McKinney and Attorney Lamar for a total of 36.6 hours  *See Pa. State Lodge Fraternal Ord. of Police v. Twp. of Springfield*, 2024 WL 1219960, at *10 (E.D. Pa. Mar. 21, 2024) citing *Shelton v. Restaurant.com Inc.*, 2016

12

WL 7394025, at *8 (D.N.J. Dec. 21, 2016) ("Plaintiffs' billing records reflect excessive inter- and intra-firm communications. In particular, counsel billed for informal meetings and discussions amongst themselves, and each attorney billed separately for many of the same discussions, thereby increasing the attorneys' fees. In addition, counsel billed for every e-mail correspondence with co-counsel on the matter. The Court will, therefore, disallow the hours billed by attorneys with the lower hourly rate when two attorneys from the same firm billed for the same telephone conference or informal meeting and discussion."). Accordingly, the Court shall reduce Attorney Lamar's (the attorney with the lower rate) total hours for conferencing 50% from 73.2 to 36.6. This results in the number of allowable hours for Attorney Lamar from 149.9 to 113.3. (149.9-36.6 is 113.3)

KU also claims that Attorney McKinley and Attorney Lamar billed at their normal legal rate for performing administrative as opposed to legal tasks.

Our Court of Appeals has "cautioned on a number of occasions that when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." *Planned Parenthood*, 297 F.3d at 266 (3d Cir. 2002). "Purely clerical work, such as copying and filing, is non-billable and is usually absorbed in the attorney's fee as overhead, which is true in this area and throughout Pennsylvania." *Moffitt v. Tunkhannock Area Sch. Dist.,* No. 13-1519, 2017 WL 319154, at *6 (M.D. Pa. Jan. 20, 2017). In addition, "[f]iling documents, whether in person or electronically, requires no legal skill and is a purely clerical or administrative task." *Id*. See *McKenna v. City of Phila.,*, 582 F.3d 447, 457 (3d Cir. 2009)(describing clerical work to include faxing, emailing, filing, scanning, assembling, and conforming).[4]

---

[4] As an example of the inefficiencies of having counsel perform administrative tasks the Defendants point out that "[i]t is clear that, rather than electronically converting the documents to PDF as encouraged by Local Civ. R. 5.1.2(5)(b), counsel printed out each court filing (many of which were hundreds of pages long), scanned all of the pages, and then filed them on the docket – rendering them non-text searchable. These activities surely were time-consuming, clerical in nature, and likely were a significant part of the hours attributed to each of the filings. In fact, on multiple occasions, counsel made an error in the process of filing documents – a task that should not be compensated at all – requiring additional time dedicated to these tasks. See, e.g., Docs. 2, 3, 25, 50. Plaintiff's

13

Neither Attorney McKinley nor Attorney Lamar employed a paralegal to work on this case. According to Attorney McKinley, her office manager assisted her with many clerical tasks. In her Declaration, Attorney McKinley attests that "Plaintiff's counsel are not seeking reimbursement for the far from insignificant expenses they have incurred for copying, electronic research, and other costs they have incurred to adequately prosecute and support the litigation. Further, McKinley & Ryan has not billed for any of the paralegal or administrative personnel time they expended throughout the case." ECF 105-3, ¶ 40. The Court has reviewed the billing records of Attorney McKinley and Attorney Lamar and find that they do not include any compensation for administrative tasks at all let alone at their normal hourly rates. Therefore, the Court will not make any adjustment to the lodestar based on Attorney McKinley or Attorney Lamar performing administrative tasks.

KU next seeks a 50% reduction in the amount of the lodestar since Plaintiff was only successful on six (actually seven) of the 12 claims he brought.

After the court has calculated the lodestar, the court may adjust the fee for other considerations, including the "results obtained." *Hensley,* 461 U.S. at 434 (quoting *Johnson v. George Highway Express, Inc.,* 488 F.2d 714, 717–19 (5t' Cir.1974)). "This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief." *Id.* In that situation, the court must ask two questions.

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.*

With respect to the first question, if a court determines that litigation of unsuccessful claims is distinct from claims on which the party succeeded, it may reduce the hours spent

---

discovery productions also appear to have followed this same print and scan practice." [ECF 109, p. 13.] While the Court agrees that this method is cost and time consuming and also presents a burden for the Court with having to deal with documents that are non-text searchable, there is no evidence in the record that either of Plaintiff's counsel performed and/or billed for these tasks.

litigating the unsuccessful claims. *Hensley,* 461 U.S. at 434–35. It may do so "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id*. However, an award of attorneys' fees should not simply reflect a mathematical ratio between the successful and unsuccessful claims. *McKenna,* 582 F.3d at 458; *Pub. Interest Research Group of N.J. v. Windall,* 51 F.3d 1179, 1190 (3d Cir.1995) (a simple mechanistic reduction based solely on the ratio of successful claims is precluded by *Hensley* ). Therefore, the Court rejects outright KU's request that the Court reduce the lodestar by 50% because Plaintiff was successful on only 50% of his claims.

The second critical question a court may consider is the overall degree of success. *Spencer v. Wal-Mart Stores, Inc.,* 469 F.3d 311, 318 (3d Cir. 2006) ("Where a plaintiff has achieved only partial or limited success, a district court may adjust the fee downward."); *Hensley,* 461 U.S. at 434–46; *McKenna,* 582 F.3d at 458. In addition, "(t)he amount of damages *awarded,* when compared with the amount of damages *requested,* may be one measure of how successful the plaintiff was in his or her action, and therefore 'may be taken into account when awarding attorneys' fees to a civil rights plaintiff.'" *Washington,* 89 F.3d at 1042 (quoting *Abrams v. Lightolier,* 50 F.3d 1204, 1222 (3d Cir.1995) (emphasis in original.). A court, however, "cannot adjust counsel fees to maintain a certain ratio between the fees and damages**.**" *Id.*

The Court granted summary judgment in favor of Plaintiff on Plaintiff's seven main claims which alleged Defendants violated most of the liability sections under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, including Failure to Accommodate (Count One); Facial Invalidity of Defendants' Full-duty Requirement (Count Two); Intentional Discrimination Because of Disability (Direct Evidence)(Count Three); Intentional Discrimination Because of Disability (Pretext) (Count Four); Disparate Impact based on Prohibited Standards, Criteria, or Methods of Administration (Count Five ); KU's claim for Retaliation and Interference under Section 504 (Count Six). The Court also granted summary judgment in favor of the Defendants

on Section 504 Retaliation and Interference Claims against Dr. Hawkinson (Count Seven); 42 U.S.C. Section 1983 claims against Dr. Hawkinson for Deprivation of Federal Statutory Rights under Section 504 (Count Eight); Section 1983 Claims against Dr. Hawkinson for Violations of First and Fourteenth Amendments (Count Nine); Mr. Pena's Retaliation and Interference under Section 504 (Count Ten); Section 1983 Claims against Mr. Pena for Violations of Plaintiff's Federal Statutory Rights under Section 504 (Count Eleven) and Section 1983 Claims against Mr. Pena for First Amendment Violations (Count Twelve).

As stated by the Supreme Court in *Hensley,* "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit ... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley*, 461 U.S. at 435. Plaintiff's counsel has not differentiated between the number of hours they spent on the successful claims versus the number of hours they spent on the unsuccessful claims. Indeed, it may be impractical if not impossible for Plaintiff's counsel to do so.

Plaintiff clearly did recover on the very important main disability discrimination claims he brought under the RA that resulted in him receiving a Final Judgment in his favor. He did not recover on his secondary civil rights claims and First Amendment claims against the individual Defendants. All the claims flowed from KU's blatant refusal to provide Plaintiff (or anyone else) with a remote work accommodation for the Fall Semester of 2021. The fact that Plaintiff was not successful on all of her claims in this particular case is certainly not a reason to make a downward adjustment to the lodestar.[5]

---

[5] Indeed, in his Declaration, Attorney Lamar attests that he has "exercised billing judgment and am not requesting payment of fees for [his] time associated with the tasks regarding the 1st Amendment claims that were ultimately dismissed at the summary judgment, nor for the claims that Oross was entitled to seek damages for his retaliation claims under the Rehabilitation Act." [ECF 105-7, ¶ 22.]

As to damages, Plaintiff's counsel should not be penalized for not being able to recover a substantial compensatory damages award in this matter. This is because after Plaintiff brought this suit in 2021, the United States Supreme Court, in 2022, eliminated recovery for emotional distress damages under Section 504. *Cummings v. Premier Rehab Keller, LLC*, 596 U.S. 212 (2022). As a result, Plaintiff's recovery was limited to full back pay and injunctive relief. Indeed, KU is fortunate that the *Cummings* decision was decided in 2022 or else KU would have potentially been, given Plaintiff's unique medical history, subjected to significant compensatory damages for emotional distress. In any event, the purpose of fee-shifting statutes is to assure that "civil rights claims of modest cash value can attract competent counsel." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011).

In sum, the Court finds that 818.9 hours for Attorney McKinley are reasonable and 113.3 hours for Attorney Lamar are reasonable.[i] Multiplying Attorney McKinley's approved rate of 850.00 per hour by 818.9 hours results in a final lodestar for Attorney McKinley of $696,065.00 Multiplying Attorney Lamar's approved rate of 825.00 per hour by 113.3 results in a final lodestar for Attorney Lamar of $93,472.50. The combined lodestar is $789,537.50. Therefore, the Court grants the Plaintiff's fee petition in the amount of $789,537.50.

---

[i] For Attorney McKinley that is the requested amount of 909.5 hours-62.8 hours (fee petition)-8 hours (preparation time for Plaintiff's deposition)-19.8 hours (motion to strike) for a total of 818.9 hours. For Attorney Lamar that is the requested amount of 149.9 hours-36.6. hours (conferencing) for a total of 113.3 hours.